## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

_____
                                       )

| | |
|---|---|
| MRP PROPERTIES COMPANY, LLC, | ) |
| VALERO REFINING COMPANY – | ) |
| OKLAHOMA, VALERO REFINING | ) |
| COMPANY – TENNESSEE, L.L.C., | ) |
| THE PREMCOR REFINING GROUP INC., | ) |
| VALERO REFINING – TEXAS, L.P., | ) |
| and ULTRAMAR INC., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 2:17-cv-11174-TLL-PTM |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

_____)

## DEFENDANT'S MOTION TO DISMISS MISJOINED PLAINTIFFS AND CLAIMS OR, IN THE ALTERNATIVE, TO SEVER AND TRANSFER CLAIMS

Pursuant to Federal Rule of Civil Procedure 21, Defendant United States hereby moves to dismiss as misjoined all plaintiffs other than MRP Properties Company, LLC ("MRP"), and the claims asserted by MRP that do not address refineries located in Michigan.  In the alternative, the United States moves to sever all claims regarding refineries located outside the Eastern District of Michigan, and transfer them pursuant to 28 U.S.C. § 1404(a) to the districts where those refineries

are located.  In support of the relief requested in this motion, the United States

relies on the accompanying Memorandum in Support, filed contemporaneously

herewith, as well as any and all additional arguments and materials properly to be

submitted in support of this motion.  The United States sought concurrence on this

motion from Plaintiffs on August 24, 2017, and such concurrence was denied.

Dated:　　　August 25, 2017　　　　Respectfully submitted,


JEFFREY H. WOOD
Acting Assistant Attorney General
Environment & Natural Resources Division

s/ Kate R. Bowers
KATE R. BOWERS
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, D.C.  20044
(202) 307-0930
kate.bowers@usdoj.gov

DANIEL L. LEMISCH
Acting United States Attorney

Lynn M. Dodge (P38136)
Assistant U.S. Attorney
211 West Fort Street
Suite 2001
Detroit, MI  48226
(313) 226-0205
lynn.dodge@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

_____
                               )

MRP PROPERTIES COMPANY, LLC,     )
VALERO REFINING COMPANY –      )
OKLAHOMA, VALERO REFINING     )
COMPANY – TENNESSEE, L.L.C.,    )
THE PREMCOR REFINING GROUP INC., )
VALERO REFINING – TEXAS, L.P.,    )
and ULTRAMAR INC.,                )
                               )
           Plaintiffs,        )
                               )
    v.                        ) No. 2:17-cv-11174-TLL-PTM
                               )
UNITED STATES OF AMERICA,     )
                               )
          Defendant.       )
_____)

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS MISJOINED PLAINTIFFS AND CLAIMS OR, IN THE ALTERNATIVE, TO SEVER AND TRANSFER CLAIMS

This case was brought by a group of six separately incorporated companies that, individually, own twelve current or former petroleum refineries in nine states. They each seek to recover from the United States a portion of their costs of cleaning up each site. Only three of the refineries are located in Michigan, and those three refineries are all purportedly owned by only one plaintiff, MRP Properties Company, LLC. The allegations in the First Amended Complaint have one common theme: that immediately prior to and during World War II, the United

States operated or arranged for disposal of hazardous substances at the twelve refineries, and therefore is responsible for a portion of the cleanup costs incurred at these sites. This theory is where the commonalities end.

The Amended Complaint alleges that, during the relevant time period, the twelve refineries each produced a different mix of petroleum products, received different production orders from relevant government agencies, and were owned and operated by different companies. Nine of the refineries are located outside Michigan, and have little or no connection to this judicial district. Despite the different factual bases underlying each claim and the need for substantial site-specific discovery relating to each refinery, and notwithstanding the lack of joint ownership of or responsibility for cleanup at any of the refineries, Plaintiffs have chosen to combine all of their claims into the single suit now before this Court.

For the reasons set forth herein, the Court should dismiss without prejudice as misjoined the five plaintiffs that do not assert any claims regarding refineries in this judicial district, as well as the claims asserted by the remaining plaintiff that do not address Michigan refineries, pursuant to Federal Rule of Civil Procedure 21. In the alternative, the Court should sever all claims regarding refineries located outside the Eastern District of Michigan, and transfer them pursuant to 28 U.S.C. § 1404(a) to the districts where the refineries are located.

## BACKGROUND

Plaintiffs have filed an action to recover response costs under section 107(a) of the federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607(a), as well as for declaratory relief pursuant to section 113(g) of CERCLA, *id.* § 9613(g), and the federal Declaratory Judgment Act, 28 U.S.C. § 2201.  The Amended Complaint alleges that Plaintiffs MRP Properties Company, LLC ("MRP"), Valero Refining Company-Oklahoma ("Valero-OK"), Valero Refining Company-Tennessee, L.L.C. ("Valero-TN"), The Premcor Refining Group Inc. ("Premcor"), Valero Refining-Texas, L.P. ("Valero-TX"), and Ultramar Inc. ("Ultramar") are each the current owners of one or more of twelve refineries located in nine different states (collectively, the "Refineries").  Am. Compl. ¶¶ 30-36 (Leonard Alma Refinery); 37-44 (Mid-West Alma Refinery); 45-52 (Roosevelt Mount Pleasant Refinery); 53-60 (Bell Ardmore Refinery); 61-68 (Vickers Potwin Refinery); 69-76 (Delta Memphis Refinery); 77-83 (Kanotex Arkansas City Refinery); 84-90 (Worth Blue Island Refinery); 91-99 (Gulf Port Arthur Refinery); 100-13 (Eastern States Houston Refinery); 114-19 (Caminol Hanford Refinery); 120-25 (Caminol Santa Fe Springs Refinery).  Plaintiffs do not allege common ownership of any refinery; only one plaintiff is alleged to own and have incurred response costs per refinery. The Amended Complaint refers to Plaintiffs collectively as the "Valero

Companies" for convenience, but does not identify any relationship between the individual plaintiffs. Each plaintiff alleges that it has incurred costs to remediate the contamination allegedly caused by the United States at one or more of the Refineries, *id.* ¶¶ 36, 44, 52, 60, 68, 76, 83, 90, 99, 113, 119, 125, and seeks to have the United States reimburse it for these costs. *Id.* ¶ 132.

Plaintiffs do not allege that anyone other than the current owner-plaintiff incurred response costs at a single refinery site. Specifically, Plaintiff MRP allegedly incurred cleanup costs at five refinery sites (Leonard Alma ¶ 36, Mid-West Alma ¶ 44, Roosevelt Mount Pleasant ¶ 52, Vickers Potwin ¶ 68, and Kanotex Arkansas City ¶ 83), while Plaintiff Valero-OK allegedly incurred costs only at the Bell Ardmore Refinery (¶ 60). Similarly, Plaintiff Valero-TN purportedly incurred cleanup costs related only to a single site—the Delta Memphis Refinery (¶ 76), as did Plaintiff Valero-TX, which allegedly incurred costs to clean up the Eastern States Houston Refinery (¶ 113). Plaintiff Premcor claims to have incurred costs at two sites (Worth Blue Island (¶ 90) and Gulf Port Arthur (¶ 99)), as does Ultramar with respect to both refineries in California (Caminol Hanford (¶ 119) and Caminol Santa Fe Springs (¶ 125)).

For each of the sites, Plaintiffs allege that the United States is liable under CERCLA because, just prior to and during World War II, the United States purportedly "controlled the operation of the nation's petroleum refining industry

-4-

broadly and the nation's refineries specifically to ensure the manufacture and availability of petroleum products necessary to win the war."  Am. Compl. ¶ 1. Specifically with respect to each of the Refineries, Plaintiffs allege that the United States controlled the inputs, outputs, prices, labor force, and hazardous waste generation, release, and disposal in the wartime period.  *E.g.*, *id.* ¶¶ 22-23; 27. Plaintiffs also allege that the United States owned portions of only one of the Refineries, the Eastern States Houston Refinery, during World War II.  *Id.* ¶ 100.

## ARGUMENT

### I.   The Plaintiffs Are Misjoined, and Their Claims Should Not Proceed Together.

Pursuant to Federal Rule of Civil Procedure 21, this Court, "[o]n motion or on its own . . . may at any time, on just terms, add or drop a party [or] sever any claim against a party."  To determine whether plaintiffs are appropriately joined, courts apply the two-prong test governing permissive joinder of parties and as set forth in Rule 20(a).  *Proctor v. Applegate*, 661 F. Supp. 2d 743, 778-86 (E.D. Mich. 2009).  Specifically, plaintiffs' claims must both (1) arise out of the same transaction or occurrence, *and* (2) present some common question of law or fact. *Id.  See also* Fed. R. Civ. P. 20(a)(1).

This Court has observed that multiple plaintiffs in a single lawsuit cannot "pass the two-part test of Rule 20(a)(1) where each plaintiff provides a different factual background, giving rise to their 'mutual' cause of action."  *Harris v. Gerth*,

-5-

No. 08-CV-12374, 2008 WL 5424134, at *3 (E.D. Mich. Dec. 30, 2008) (citations omitted). Even where plaintiffs allege that a defendant "subjected them to the same or similar treatment," their claims may be factually unrelated where the details of and reasons for the alleged treatment vary from plaintiff to plaintiff. *See Proctor*, 661 F. Supp. 2d at 779 (finding that claims by multiple prison inmates against employees of the Michigan Department of Corrections were misjoined) (citing *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) (finding that multiple plaintiffs' claims seeking to compel the Immigration and Naturalization Service to adjudicate pending applications or petitions did not create a common transaction or occurrence where each plaintiff "waited a different length of time, suffering a different duration of alleged delay," where "the delay is disputed in some instances and varies from case to case," and where "there may be numerous reasons for the alleged delay")).

The Amended Complaint asserts that the United States is liable for response costs at twelve refineries. Only three of those refineries—Leonard Alma, Mid-West Alma, and Roosevelt Mount Pleasant—are located in Michigan, and only one plaintiff—MRP—is alleged to have incurred response costs at those refineries. Am. Compl. ¶¶ 36, 44, 52. The remaining nine refineries are located in six different states and are now allegedly owned by five different plaintiffs. *Id.* ¶¶ 53, 60 (Bell Ardmore Refinery); 61, 68 (Vickers Potwin Refinery); 69, 76 (Delta

-6-

Memphis Refinery); 77, 83 (Kanotex Arkansas City Refinery); 84, 90 (Worth Blue

Island Refinery; 91, 99 (Gulf Port Arthur Refinery); 100, 113 (Eastern States

Houston Refinery); 114, 119 (Caminol Hanford Refinery); 120, 125 (Caminol

Santa Fe Springs Refinery).  With the exception of the Hanford and Santa Fe

Springs refineries in California, each refinery was owned and operated during the

wartime period by a different company that is not a party to this suit.  *See id.* ¶¶ 30,

37, 45, 53, 61, 69, 77, 84, 91, 100.  Claims by apparently unrelated plaintiffs that

the United States is liable at separate refineries that were operated by separate

companies and are now owned by separate parties do not arise out of the same

transaction or occurrence.  Under these circumstances, the appropriate remedy for

misjoinder is to drop without prejudice all plaintiffs other than MRP, and dismiss

the portion of MRP's claims relating to refineries outside the Eastern District of

Michigan.

### A.     Plaintiffs Have Failed to Meet the Permissive Joinder Standard.

Plaintiffs in this case do not "assert any right to relief jointly, severally, or in

the alternative with respect to or arising out of the same transaction, occurrence, or

series of transactions or occurrences."  Fed. R. Civ. P. 20(a)(1)(A).  Each refinery

is owned by a single plaintiff, and only a single plaintiff is alleged to have incurred

response costs at each refinery.  The Amended Complaint does not name as a

plaintiff, or even identify, a common parent company that has suffered injury as a

result of the United States' alleged involvement at the Refineries in addition to the refinery owners.  If a court found that the United States was liable for Plaintiffs' response costs at all twelve refineries, payment would be made separately to each plaintiff, in accordance with the costs incurred by that plaintiff at each refinery.

Furthermore, each plaintiff's claim arises out of a separate transaction or occurrence in that, during the relevant time period, the Refineries were alleged to have been owned and operated independently by separate companies that negotiated separately with the government regarding the production and sale of petroleum products.  Indeed, the Amended Complaint provides a separate factual background for its claims relating to each refinery.

As also illustrated in the Amended Complaint, each refinery is alleged to have produced a different assortment of petroleum products.  For example, the Amended Complaint alleges that the government directed the Roosevelt Mount Pleasant Refinery to produce kerosene, tractor fuel, and diesel fuel.  Am. Compl. ¶ 48.  By contrast, the Amended Complaint alleges that the government directed the Bell Ardmore Refinery to produce aviation gasoline (avgas), 80-octane all-purpose military gasoline, kerosene, avgas components including codimer, and other products.  *Id.* ¶ 56.  Such variations in products manufactured may have resulted in varying production processes at each refinery, some of which may have been more or less likely to result in hazardous waste contamination.  The Amended Complaint

also alleges that the United States' liability as to one of the refineries is based in part on its ownership of portions of that refinery, *id.* ¶ 112, which is a different basis for alleged liability under CERCLA and is relevant to the Court's liability analysis for only that refinery. Similarly, the Amended Complaint also makes site-specific allegations about the Government's communications with individual refineries, *e.g.*, *id.* ¶¶ 70, 85, 92, 109, and its involvement in personnel and labor issues at some of the various Refineries at issue. *Id.* ¶¶ 81, 97, 110.

Plaintiffs all assert that the United States is liable under section 107(a) of CERCLA, and suggest that the United States' liability should be evaluated based at least in part on the government's general involvement in the petroleum refining industry immediately prior to and during World War II. Am. Compl. ¶¶ 12-28. But the determination of whether an entity is an "owner," "operator," or "arranger" for purposes of CERCLA liability is a fact-intensive and case-specific inquiry, *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 610 (2009); *Bestfoods v. United States*, 524 U.S. 51, 66-67 (1998); *United States v. Vertac Chem. Corp.*, 46 F.3d 803, 808 (8th Cir. 1995). The Court must therefore answer the question of liability based on an evaluation of the totality of the United States' alleged activities at each site. *E.g.*, *Exxon Mobil Corp. v. United States*, 108 F. Supp. 3d 486, 521-30 (S.D. Tex. 2015) (finding the United States was not an operator of petroleum refineries during World War II or the Korean War);

-9-

*Lockheed Martin Corp. v. United States*, 35 F. Supp. 3d 92, 144-50 (D.D.C. 2014) (where parties had stipulated to liability, evaluating equitable factors in allocation through operator liability framework set forth in *United States v. Bestfoods*, 524 U.S. at 66-67, and determining that United States was not an operator of facility).

Here, as in *Coughlin* and *Proctor*, Plaintiffs allege some commonalities in the United States' involvement at the various Refineries. But the basic common fact that all of the Refineries sold petroleum products to the United States during World War II is not a sufficient basis on which to combine distinct and separate facts, locations, and owners. The allegations of the Amended Complaint describe refineries that produced a different mix of products, received different production orders from the relevant government agencies (including from multiple districts of the Petroleum Administration for War, depending on the district in which a refinery was located), were in operation for different lengths of time, were owned or operated by a different combination of entities both during and after World War II, and may have experienced differing levels of hazardous substance releases both during and after World War II.

Other important factual details vary from refinery to refinery. Plaintiffs' allegations relate to the United States' involvement at the Refineries immediately before and during World War II, but the Refineries were operational for a much longer period of time. It is likely that other entities have owned, operated, or

-10-

arranged for the disposal of hazardous materials from each refinery over the course of that refinery's period of operation.  These entities would also be potentially liable under CERCLA, and the United States may wish to assert counterclaims against each plaintiff as well as third-party claims against other potentially liable parties for contribution pursuant to section 113(f) of CERCLA, 42 U.S.C. § 9613(f)(1).  The identity of those potentially responsible parties is different at each refinery.  For example, publicly available state regulatory information related to the cleanup of the former Caminol Santa Fe Springs refinery reveals that refinery operations ceased by 1956 and "[b]etween 1958 and 1991, [the site] was used for steel fabrication (former Riverside Steel)."[1]  The California State Water Resources Control Board, the regulatory agency overseeing the cleanup, refers to the site as the "Former Riverside Steel Site."  Certainly the site owner and operator from 1958 to 1991, Riverside Steel, is a potentially responsible party that should be a third-party defendant to any CERCLA claims related to Santa Fe Springs.   At best, adding third-party defendants that are implicated in even just one of the twelve refineries at issue in this case, and which are located far outside of this judicial district, would be extremely cumbersome for the Court and the parties.  At worst, this Court would be unable to issue subpoenas or order witnesses for those third-

---

[1]
http://geotracker.waterboards.ca.gov/profile_report.asp?global_id=SL0603744531.

party defendants to appear, if the witnesses do not reside or transact business in Michigan, *see* Fed. R. Civ. P. 45(c)(1); and the United States would be unable to bring a third-party complaint under section 113(f) of CERCLA because of jurisdiction and/or venue issues.

Similarly, if the Court finds that the United States is liable under CERCLA for a plaintiff's cleanup costs at a refinery, the Court will need to consider several other site-specific details in order to determine the amount of that plaintiff's recoverable response costs and an appropriate allocation of those costs. These details may include the care exercised in the operation of the refinery; production volume and leaks of hazardous materials occurring before and after the wartime period; prior and subsequent site operations that are related or unrelated to refining petroleum but that may have contributed contaminants to a site; activities undertaken by a plaintiff to address hazardous contamination at the refinery; and the response costs incurred by a plaintiff at a refinery, including whether those alleged costs were necessary or in substantial compliance with the requirements of the National Contingency Plan,  as well as the adequacy of the documentation surrounding those costs. *See United States v. R.W. Meyer, Inc.*, 932 F.2d 568, 571 (6th Cir. 1991). Such an analysis must be performed for each refinery site where the United States may be found liable for the reimbursement of a portion of a plaintiff's alleged costs. These facts demonstrate that Plaintiffs' claims regarding

-12-

the Refineries do not arise out of the same transaction or occurrence, and do not present predominantly the same question of law or fact.  The unique factual background at each refinery means that Plaintiffs' claims must be evaluated on a refinery-by-refinery basis, and are not properly joined in a single lawsuit.

### B.   Dismissal of the Misjoined Parties and Claims Is Appropriate.

The Federal Rules of Civil Procedure provide for two options to remedy misjoinder.  First, the Court may drop misjoined parties "on such terms as are just."  *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2-3 (W.D. Mich. Feb. 19, 2008) (quoting *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006)).  Courts have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties," such as where the dismissed parties "lose the ability to prosecute an otherwise timely claim" or where dismissal is with prejudice.  *Harris*, 2008 WL 5424134, at *4-5 (citing cases).  Additionally, where a complaint as filed is "completely unmanageable," and separate actions would be "more appropriate for the just and efficient determination" of the claims asserted, dismissal of all but one plaintiff may be proper.  *Carney*, 2008 WL 485204, at *2–3.

Here, there is no evidence that dismissal without prejudice of the misjoined plaintiffs and claims would cause "gratuitous harm to the parties."  Nothing in the Amended Complaint suggests that the statute of limitations will have run since the

-13-

filing of the initial complaint on any of Plaintiffs' claims if the misjoined plaintiffs and their claims are dismissed and those plaintiffs are required to refile elsewhere. Moreover, as in *Carney*, the Amended Complaint is unmanageable in its current form. A claim by any one plaintiff regarding any one of the Refineries will be complex and will require the Court to consider a host of factual and legal issues. Each such claim will involve extensive factual, site-specific discovery, consideration of historical documents relating to the operations at each refinery, and the potential addition of other parties that may also bear responsibility for the alleged contamination at each site. Taken together, the claims are "unwieldy and impossible to manage." *Proctor*, 661 F. Supp. 2d at 781-82. To combine into a single case twelve apparently unrelated CERCLA lawsuits, most of which have no connection to this forum, would needlessly monopolize this Court's resources and prolong the resolution of each claim. Under these circumstances, the most appropriate course of action is to drop all plaintiffs other than MRP because they do not assert any claims regarding refineries in Michigan. Additionally, the Court should drop the claims asserted by MRP that do not address Michigan refineries.

Of the six plaintiffs in this case, only MRP is alleged to own refineries located in the Eastern District of Michigan. Under these circumstances, the most appropriate course of action is to dismiss without prejudice all plaintiffs other than MRP. If those plaintiffs wish to proceed separately, they may do so by refiling

separate complaints in an appropriate forum. Additionally, while MRP's claims with respect to the three Michigan refineries should be allowed to proceed in this Court, two refineries allegedly owned by MRP—the Vickers Potwin Refinery and the Kanotex Arkansas City Refinery—are located in Kansas. MRP's claims regarding those two refineries should also be dismissed as misjoined.

Alternatively, courts may sever the misjoined claims and, under appropriate circumstances, transfer them to another venue. *Proctor*, 661 F. Supp. 2d at 781. This Court has recognized that "the fact that a claim might be subject to transfer to a more appropriate venue is a valid reason to order severance." *Id.* (citation and internal quotation marks omitted). For the reasons discussed in Section II, *infra*, the most appropriate venue for the claims regarding each refinery is the district where that refinery is located. If this Court agrees that Plaintiffs are misjoined but does not wish to drop the misjoined parties, it can sever and transfer the portions of the claims that relate to the refineries outside Michigan. Following this approach, the Court would transfer MRP's claims regarding the Vickers Potwin and Kanotex Arkansas City refineries to the District of Kansas; Valero-TN's claim regarding the Delta Memphis Refinery to the Western District of Tennessee; Premcor's claim regarding the Worth Blue Island Refinery to the Northern District of Illinois; Premcor's claim regarding the Gulf Port Arthur Refinery to the Eastern District of Texas; Valero-TX's claim regarding the Eastern States Houston Refinery to the

-15-

Southern District of Texas; Ultramar's claim regarding the Caminol Hanford

Refinery to the Eastern District of California; and Ultramar's claim regarding the

Caminol Santa Fe Springs Refinery to the Central District of California.

## II.    In the Alternative, Transfer of the Non-MRP Plaintiffs' Claims is Appropriate under 28 U.S.C. § 1404(a).

Even if this Court finds that Plaintiffs are properly joined, it should still

sever and transfer the claims relating to refineries outside Michigan.  Under 28

U.S.C. § 1404(a), district courts have broad discretionary authority to transfer a

case or severed claims to another, more appropriate, district.  *Van Dusen v.*

*Barrack*, 376 U.S. 612, 616 (1964); *Reese v. CNH America LLC*, 574 F.3d 315,

320 (6th Cir. 2009).  Section 1404(a) provides: "For the convenience of parties and

witnesses, in the interest of justice, a district court may transfer any civil action to

any other district or division where it might have been brought."  28 U.S.C. §

1404(a).  The purpose of transfer is "to prevent the waste of time, energy and

money and to protect litigants, witnesses and the public against unnecessary

inconvenience and expense."  *Van Dusen*, 376 U.S. at 616 (citation and internal

quotations omitted).  In determining whether to transfer venue, the Court must

evaluate "(1) whether the action could have been brought in the proposed

transferee district, (2) whether a transfer would promote the interests of justice, and

(3) whether a transfer would serve the parties' and witnesses' convenience."

*Perceptron, Inc. v. Silicon Video, Inc.*, 423 F. Supp. 2d 722, 728-29 (E.D. Mich.

-16-

2006).  Here, severance and transfer is appropriate because the claims regarding nine of Plaintiffs' twelve refineries arose in other venues, because those claims could be tried most expeditiously in other venues, and because Plaintiffs have chosen a forum with little or no connection to their claims regarding the refineries located outside Michigan.

## A.    Venue Lies in the Proposed Transferee Courts.

A threshold question when a party moves to transfer under 28 U.S.C. § 1404(a) is whether the proposed transferee court is one in which the action originally might have been brought.  *Perceptron*, 423 F. Supp. 2d at 728-29. CERCLA provides that "[v]enue shall lie in any district in which the release or damages occurred, or in which the defendant resides, may be found, or has his principal office."  42 U.S.C. § 9613(b).

Other than for MRP's three Michigan refineries, the releases at issue in Plaintiffs' claims occurred at refineries located in the District of Kansas, Eastern District of Oklahoma, Western District of Tennessee, Northern District of Illinois, Eastern District of Texas, Southern District of Texas, Eastern District of California, and Central District of California.  Venue is therefore proper in these districts.[2]

---

[2] Because it has been held that the federal government "may be found" in every judicial district in the United States, venue may technically be proper here.  *See Superior Oil Co. v. Andrus*, 656 F.2d 33 (3d Cir. 1981) (where venue lies where

**B.     The Balance of Factors Tips Strongly in Favor of Transfer.**

Once a court determines that a case could have been brought in the proposed

transferee district, it considers several factors in deciding whether to exercise its

discretion and transfer a case:

> (1) the convenience of witnesses; (2) the location of relevant
> documents and relative ease of access to sources of proof; (3) the
> convenience of the parties; (4) the locus of the operative facts; (5) the
> availability of process to compel the attendance of unwilling
> witnesses; (6) the relative means of the parties; (7) the forum's
> familiarity with the governing law; (8) the weight accorded the
> plaintiff's choice of forum; and (9) trial efficiency and the interests of
> justice, based on the totality of the circumstances.

*Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000) (quoting

*Pilates, Inc. v. Pilates Inst.*, 891 F. Supp. 175 (S.D.N.Y. 1995)).  *See also Means v.*

*U.S. Conference of Catholic Bishops*, 836 F.3d 643, 651 (6th Cir. 2016).  Here, in

light of these factors, "fairness and practicality strongly favor the [fora] to which

[severance and] transfer is sought."  *Thomas v. Home Depot, U.S.A., Inc.*, 131 F.

Supp. 2d 934, 936 (E.D. Mich. 2001) (citation omitted).

---

the defendant "resides" or "may be found," or where the cause of action arose,
venue was proper in the District of Delaware because, while the federal defendants
could not be said to "reside" there, they could "be found" in that district, as in any
other district).  Because the federal government arguably may be sued in any
district when a venue provision contains such language, however, the United States
is uniquely dependent on the Court's broad discretion to transfer to a more
appropriate venue.

Most significantly here, the locus of the operative facts is found in each of the districts where the refineries are located, where they were operated prior to and during World War II, and where they continued to operate well beyond that period, in some instances into the present.  Plaintiffs argue that the United States is liable for costs of response incurred at specific refineries based on the United States' involvement in operation of those facilities during World War II.  The districts in which those refineries are located are where all of the activities that Plaintiffs allege made the United States an "owner," "operator," or "arranger" for purposes of CERCLA liability either occurred or had effect; where all of the contamination at issue is located and where any harm associated with that contamination will be experienced; and where Plaintiffs' alleged environmental cleanup efforts have occurred or are occurring.  The parties will need to examine documents concerning the history of operations at each refinery and the costs that Plaintiffs have incurred in cleaning up the sites, and the United States expects that most such documents will be located at the respective refineries, at Plaintiffs' corporate offices, or in offices of the state regulators overseeing cleanup efforts.  There is, therefore, greater access to relevant documents, and ease of access to sources of proof, in the districts where the non-Michigan refineries are located.

The convenience of witnesses also weighs strongly in favor of severance and transfer.  To the extent they are still available to testify, the United States

-19-

anticipates that witnesses in this case are likely to include persons who worked or now work at each refinery and would know about plant waste handling and disposal practices during the relevant periods. Such witnesses are logically more likely to be located in the area where each refinery is located than in the Eastern District of Michigan. Given that the relevant time period stretches back to World War II or even earlier, many of these witnesses are likely retired and elderly, and may be limited in their ability to travel. To the extent state regulatory authorities have overseen Plaintiffs' cleanup efforts, witnesses may also include state government officials for whom travel to Michigan would be inconvenient. Additionally, the majority of non-party witnesses, such as retired refinery employees and state agency employees, are likely beyond this Court's subpoena authority for purposes of procuring their attendance at trial. *See* Fed. R. Civ. P. 45(b)(2). Accordingly, the availability of process to compel the attendance of unwilling witnesses also weighs in favor of transfer.

Furthermore, it will be more convenient to litigate those claims where they arose rather than in an unrelated forum in another state. Of the five plaintiffs other than MRP, two are organized in Delaware, one is organized in Texas, and one is organized in Nevada. Am. Compl. ¶¶ 7-10. The Amended Complaint does not allege that these plaintiffs transact business or maintain offices in Michigan. With

the possible exception of Valero-OK,[3] it would seem to be *less* convenient for the non-MRP plaintiffs to litigate their claims in this forum.

The remaining factors also weigh strongly in favor of severance and transfer. This district lacks a strong interest in the aspects of Plaintiffs' claims that arose outside Michigan. By contrast, the districts where the refineries outside Michigan are located have a particularly strong interest in having this controversy decided locally, given that Plaintiffs' claims concern the cleanup of local contamination. *See Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 19-20 (D.D.C. 1996) ("[S]uits such as this one, which involve water rights, environmental regulation, and local wildlife . . . should be resolved in the forum where the people 'whose rights and interests are in fact most vitally affected by the suit [reside].'") (citation omitted). Because of the strong interest in having disputes concerning local environmental issues decided locally, courts routinely transfer CERCLA cases to the place where the contamination is located. *See, e.g.*, *Chartis Speciality Ins. Co. v. United States*, No. 12-cv-10579, 2013 WL 12140990, at *2-4 (C.D. Cal. Mar. 29, 2013); *T & K Realty, LLC v. Teeter Envtl. Servs., Inc.*, No. 5:07-cv-0990, 2010 WL 1189375, at *6-7 (N.D.N.Y. Mar. 24, 2010); *FPL Energy, LLC v. United*

---

[3] Even Valero-OK's ties to Michigan are limited. Although it is incorporated in Michigan, Am. Compl. ¶ 6, all of its officers are located in Texas, *see* http://w1.lara.state.mi.us/businessentitysearch/image.asp?FILE_TYPE=WEB&FILE_NAME=D201705\2017135\E0938583.tif, and the Amended Complaint does not identify any connection to this forum other than its place of incorporation.

*States*, No. 08-80212, 2008 WL 4097664, at *1 (S.D. Fla. Aug. 29, 2008). *See also Elf Atochem N. Am., Inc. v. Allegheny Ludlum Corp.*, No. 92-7459, 1995 WL 472099, at *2 (E.D. Pa. Aug. 9, 1995) (transferring CERCLA case to venue where contaminated site is located even where plaintiff resided in the forum in which the case was filed).  If nothing else, transfer would more readily allow those directly affected by the contamination at the Refineries to observe and stay apprised of developments in the cases.

Moreover, this case will require extensive discovery related to the historic operations of each refinery during the wartime years, releases of hazardous waste before, during, and after the wartime period, and Plaintiffs' efforts to address contamination at each site.  Because this information is so site-specific, it is unlikely that there are meaningful efficiencies to be gained by a trial of all of Plaintiffs' claims before one court in a single action.  Relatedly, as Plaintiffs' claims will be governed by CERCLA, a federal law, the proposed transferee fora are equally familiar with the applicable law.

Finally, while one factor to be considered by the Court—Plaintiffs' choice of forum—points in a different direction than the factors discussed above, it is entitled to little weight here.  Normally, a plaintiff's choice of forum is entitled to substantial weight in a court's transfer analysis.  *Audi AG v. D'Amato*, 341 F.

Supp. 2d 734, 749-50 (E.D. Mich. 2004). But where a plaintiff has little or no

connection to the chosen forum, this factor is to be given less weight. *Id.*

Here, as discussed above, this forum bears little or no relation to the cause of

action asserted for the nine refineries outside Michigan. Instead, Plaintiffs' claims

as to those refineries arose in the districts where those refineries are located.

Additionally, only two of the plaintiffs—MRP and Valero-OK—are organized in

Michigan. Am. Compl. ¶¶ 5-6. While the United States has departments,

divisions, and offices located in Michigan, the decisions alleged by Plaintiffs to be

liability-creating were more likely made either in the District of Columbia or at or

near each of the refineries. In any event, the United States is aware of no

connection between the non-Michigan refineries and any action undertaken or

decision made in a Michigan location. In such circumstances, the mere "presence"

of the United States in the Eastern District of Michigan does not lend weight to

Plaintiffs' choice of forum. *See Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 67-68

(D.D.C. 2003) ("[T]he parties' presence in the District of Columbia is

overshadowed by the lack of evidence that federal officials in this forum played

'an active or significant role' in the decision.") (citation omitted).

Severance and transfer would be appropriate for the above reasons even if

Plaintiffs all were apparently related, or a single entity. But here, allowing

separate plaintiffs' claims to proceed together is an invitation for disparate litigants

to band together and assert claims with an overlapping legal theory in a purportedly favorable forum, even where the litigants have no real connection to that forum.  Such forum-shopping is inappropriate and precisely what Rule 21 and 28 U.S.C. § 1404(a) were meant to address.  For the foregoing reasons, if this Court does not drop as misjoined five of the six plaintiffs or dismiss the claims regarding refineries outside Michigan, it should sever and transfer those claims regarding refineries outside Michigan pursuant to 28 U.S.C. § 1404(a).

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court drop as misjoined all plaintiffs other than MRP, thereby dismissing the claims for sites outside Michigan, and dismiss the claims asserted by MRP regarding refineries outside Michigan.  In the alternative to dismissing those claims, the United States requests that the Court sever those claims and transfer them to the districts in which each claim arose.

Dated:        August 25, 2017          Respectfully submitted,


                                       JEFFREY H. WOOD
                                       Acting Assistant Attorney General
                                       Environment & Natural Resources Division

                                       s/ Kate R. Bowers
                                       KATE R. BOWERS
                                       United States Department of Justice
                                       Environment & Natural Resources Division
                                       P.O. Box 7611
                                       Washington, D.C.  20044
                                       (202) 307-0930
                                       kate.bowers@usdoj.gov

                                       DANIEL L. LEMISCH
                                       Acting United States Attorney

                                       Lynn M. Dodge (P38136)
                                       Assistant U.S. Attorney
                                       211 West Fort Street
                                       Suite 2001
                                       Detroit, MI  48226
                                       (313) 226-0205
                                       lynn.dodge@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of August, 2017, I electronically filed

the foregoing MOTION TO DISMISS MISJOINED PLAINTIFFS AND CLAIMS

OR, IN THE ALTERNATIVE, TO SEVER AND TRANSFER CLAIMS and

MEMORANDUM IN SUPPORT via the Court's CM/ECF system, which sends a

Notice of Electronic Filing to counsel of record.


Dated:          August 25, 2017          s/ Kate R. Bowers
                                         KATE R. BOWERS
                                         United States Department of Justice
                                         Environment & Natural Resources Division
                                         P.O. Box 7611
                                         Washington, D.C.  20044
                                         (202) 307-0930
                                         kate.bowers@usdoj.gov