# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

_____

| | |
|---|---|
| MRP PROPERTIES COMPANY, LLC, ) | |
| VALERO REFINING COMPANY – ) | |
| OKLAHOMA, VALERO REFINING ) | |
| COMPANY – TENNESSEE, L.L.C., ) | |
| THE PREMCOR REFINING GROUP INC., ) | |
| VALERO REFINING – TEXAS, L.P., ) | |
| and ULTRAMAR INC., ) | No. 1:17-cv-11174-TLL-PTM |
| ) | |
| Plaintiffs, ) | Honorable Thomas L. Ludington |
| ) | |
| V. ) | Magistrate Judge Patricia T. Morris |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

_____ )

GIVONNA S. LONG (IL # 6290076)   JOHN A. FERROLI (MI # 35869)
KELLEY DRYE & WARREN LLP   DYKEMA GOSSETT PLLC
333 West Wacker Dr., Suite 2600   300 Ottawa Avenue, N.W., Suite 700
Chicago, IL  60606   Grand Rapids, MI 49503-2306
Telephone:  (312) 857-7070   Telephone:  (616) 776-7542
glong@kelleydrye.com   jferroli@dykema.com

_Attorneys for Plaintiffs, MRP Properties Company, LLC, Valero Refining Company-Oklahoma, Valero Refining Company-Tennessee, L.L.C., The Premcor Refining Group Inc., Valero Refining-Texas, L.P. and Ultramar Inc._

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS MISJOINED PLAINTIFFS AND CLAIMS OR, IN THE ALTERNATIVE, TO SEVER AND TRANSFER CLAIMS

Plaintiffs, MRP Properties Company, LLC, Valero Refining Company-Oklahoma, Valero Refining Company-Tennessee, L.L.C., The Premcor Refining Group Inc., Valero Refining-Texas, L.P. and Ultramar Inc. (collectively, the "Valero Companies" or "Plaintiffs"), respectfully submit this Response to the Motion to Dismiss Misjoined Plaintiffs and Claims or, in the Alternative, To Sever and Transfer Claims (ECF No. 13) (the "Motion") filed by Defendant, the United States of America (the "Government"), and request that the Motion be denied.

Dated:  September 22, 2017

Respectfully submitted,

*/s/Givonna S. Long*
GIVONNA S. LONG (IL # 6290076)
KELLEY DRYE & WARREN LLP
333 West Wacker Dr., Suite 2600
Chicago, IL  60606
Telephone:  (312) 857-7070
glong@kelleydrye.com

JOHN A. FERROLI (MI # 35869)
DYKEMA GOSSETT PLLC
300 Ottawa Avenue, N.W., Suite 700
Grand Rapids, MI 49503-2306
Telephone:  (616) 776-7542
jferroli@dykema.com

*Attorney for Plaintiffs, MRP Properties Company, LLC, Valero Refining Company-Oklahoma, Valero Refining Company-Tennessee, L.L.C., The Premcor Refining Group Inc., Valero Refining-Texas, L.P. and Ultramar Inc.*

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

_____

)
MRP PROPERTIES COMPANY, LLC,  )
VALERO REFINING COMPANY –  )
OKLAHOMA, VALERO REFINING  )
COMPANY – TENNESSEE, L.L.C.,  )
THE PREMCOR REFINING GROUP INC., )
VALERO REFINING – TEXAS, L.P.,  )
and ULTRAMAR INC.,  )   No. 1:17-cv-11174-TLL-PTM
)
      Plaintiffs,  )   Honorable Thomas L. Ludington
)
V.  )   Magistrate Judge Patricia T. Morris
)
UNITED STATES OF AMERICA,  )
)
      Defendant.  )
_____ )

GIVONNA S. LONG (IL #6290076)    JOHN A. FERROLI (MI # 35869)
KELLEY DRYE & WARREN LLP    DYKEMA GOSSETT PLLC
333 West Wacker Dr., Suite 2600    300 Ottawa Avenue, N.W., Suite 700
Chicago, IL  60606    Grand Rapids, MI 49503-2306
Telephone:  (312) 857-7070    Telephone:  (616) 776-7542
glong@kelleydrye.com    jferroli@dykema.com

*Attorneys for Plaintiffs, MRP Properties Company, LLC, Valero Refining Company-Oklahoma, Valero Refining Company-Tennessee, L.L.C., The Premcor Refining Group Inc., Valero Refining-Texas, L.P. and Ultramar Inc.*

## **PLAINTIFFS' BRIEF IN SUPPORT OF THEIR RESPONSE TO DEFENDANT'S MOTION TO DISMISS MISJOINED PLAINTIFFS AND CLAIMS OR, IN THE ALTERNATIVE, TO SEVER AND TRANSFER CLAIMS**

# **TABLE OF CONTENTS**

STATEMENT OF THE ISSUES PRESENTED ...................................................iv

CONTROLLING AUTHORITY ..................................................................... v

INDEX OF AUTHORITIES............................................................................vi

INTRODUCTION ............................................................................................1

BACKGROUND ..............................................................................................2

ARGUMENT ...................................................................................................4

   I.   Joinder Is Appropriate Under Federal Rule of Civil Procedure 20.................4

        A.   Plaintiffs' Claims Arise Out of the Same Series of Transactions and Occurrences......................................................................5

        B.   Plaintiffs' Claims Present Common Questions of Law and Fact ...........9

        C.   Dismissal of Plaintiffs and Claims Is Inappropriate ..............................12

   II.  Transfer Is Inefficient and a Waste of Party and Judicial Resources...........13

        A.   The Convenience of Witnesses Weighs Against Transfer ....................15

        B.   The Location of Relevant Documents and Relative Ease of Access to Sources of Proof Weighs Against Transfer............................17

        C.   The Convenience of the Parties Weighs Against Transfer....................18

        D.   The Locus of Operative Facts Is, at a Minimum, Neutral ....................19

        E.   The Availability of Process to Compel the Attendance of Unwilling Witnesses Is Neutral ...........................................................21

        F.   The Relative Means of the Parties Weighs Against Transfer...............21

        G.   The Forum's Familiarity with Governing Law Is Neutral ...................22

H.   The Weight Accorded Plaintiffs' Choice of Forum Is
Substantial and Weighs Against Transfer................................................22

I.   Trial Efficiency and the Interests of Justice Weigh Heavily
Against Transfer......................................................................................23

CONCLUSION ....................................................................................................25

CERTIFICATE OF SERVICE ............................................................................26

## STATEMENT OF THE ISSUES PRESENTED

Whether the Court should dismiss as misjoined certain claims and parties in this one consolidated lawsuit to be refiled as nine actions in nine separate districts across the country, or, in the alternative, transfer those claims and parties to proceed as nine separate lawsuits, purportedly for the convenience of the parties and witnesses.  The Valero Companies' claims present common issues of fact and law and arise from the same series of transactions and occurrences, thereby satisfying Federal Rule of Civil Procedure 20 (permissive joinder).  In addition, significant judicial efficiencies and convenience to the courts and the parties are preserved by proceeding with this case, as filed, in a single trial in the Valero Companies' properly chosen venue.

The Valero Companies' Answer: No, this Court should not dismiss or transfer the claims or parties

# CONTROLLING AUTHORITY

Page(s)

**Statute**

28 U.S.C. § 1404 ................................................................................1, 2

**Rule**

Federal Rule of Civil Procedure 20 ................................................*passim*

**Cases**

*Performance Contracting, Inc. v. DynaSteel Corp.*,
    No. 12-10165, 2012 WL 1666394 (E.D. Mich. May 9, 2012)...................*passim*

*United States v. Mississippi*,
    380 U.S. 128 (1965)................................................................8

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Lockheed Martin Corp.*,
   2007 WL 844903 (S.D. Ill. Mar. 20, 2007) ......................................................23

*Boretsky v. Corzine*,
   2008 WL 2512916 (D.N.J. 2008) ......................................................................7

*Central Transport Intern., Inc. v. Alcoa, Inc.*,
   No. 06-CV-11913-DT, 2006 WL 2844171
   (E.D. Mich. Sept. 29, 2006)................................................................17, 19, 20

*Coughlin v. Rogers*,
   130 F.3d 1348 (9th Cir. 1997) ...................................................................6, 7, 8

*Distributing Corp. of Am. v. Deere & Co.*,
   No. 87-3332, 1987 WL 61946 (E.D. Mich. Nov. 16, 1987) ............................24

*Green v. Callahan*,
   No. 2:14–CV–11453, 2014 WL 1652335
   (E.D. Mich. April 23, 2014)..............................................................................11

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947)..........................................................................................22

*Hohlbein v. Heritage Mut. Ins. Co.*,
   106 F.R.D. 73 (E.D. Wis. 1985) ........................................................................8

*Mosley v. Gen. Motors Corp.*,
   497 F.2d 1330 (8th Cir. 1974) .......................................................................5, 8

*New World Systems Corp. v. Jones*,
   No. 06-11603, 2009 WL 996954 (E.D. Mich. Apr. 14, 2009)....................16, 18

*Orton v. Johnny's Lunch Franchise LLC*,
   No. 10-cv-11013, 2012 WL 2115841 (E.D. Mich. June 8, 2012).....................24

*Patrick Collins, Inc. v. John Does 1-21*,
   282 F.R.D. 161 (E.D. Mich. 2012) .................................................................5, 6

*Patrick Collins, Inc. v. John Does 1-21*,
  286 F.R.D. 319 (E.D. Mich. 2012) ...................................................................5

*Performance Contracting, Inc. v. DynaSteel Corp.*,
  No. 12-10165, 2012 WL 1666394 (E.D. Mich. May 9, 2012)...................*passim*

*Proctor v. Applegate*,
  661 F.Supp.2d 743 (E.D. Mich. 2009) ........................................................6, 7, 11

*Steelcase, Inc. v. Smart Technologies, Inc.*,
  336 F.Supp.2d 714 (W.D. Mich. 2004) ...........................................................13

*Sullivan v. Tribley*,
  602 F.Supp.2d 795 (E.D. Mich. 2009) ........................................................13, 18

*Thomas v. Home Depot, U.S.A., Inc.*,
  131 F.Supp.2d 934 (E.D. Mich. 2001) ........................................................14, 21

*United Mine Workers of Am. v. Gibbs*,
  383 U.S. 715 (1966)...................................................................................4

*United States v. Bestfoods*,
  524 U.S. 51 (1998)...................................................................................10

*United States v. Mississippi*,
  380 U.S. 128 (1965)...................................................................................8

*United States v. Township of Brighton*,
  153 F.3d 307 (6th Cir. 1998) ........................................................................10

*William M. Yarbrough Foundation v. Garcoa Laboratories, Inc.*,
  No. 1:11-CV-907, 2013 WL 4068176 (W.D. Mich. Aug 12, 2013).................22

*Winnett v. Caterpillar Inc.*,
  2006 WL 1722434 (M.D. Tenn. June 20, 2006) ...............................................23

**Statutes**

28 U.S.C. § 1404.........................................................................................1, 2

28 U.S.C. § 1404(a) ....................................................................................13, 23

**Other Authorities**

FRCP 20 ........................................................................................*passim*

FRCP 20(a) ..................................................................................7

FRCP 20(a)(1)(A) .......................................................................5

FRCP 20(a)(1)(B) ....................................................................9, 11

# INTRODUCTION

The Valero Companies, six wholly-owned subsidiaries of Valero Energy Corporation, filed this lawsuit in the Eastern District of Michigan alleging that the Government incurred CERCLA liability as an operator of 12 refinery sites during World War II.  In its Motion, the Government moves to dismiss as misjoined all Plaintiffs other than MRP Properties Company, LLC, and all claims asserted by Plaintiffs relating to sites located outside of Michigan, to be refiled as nine separate actions across the country.  In the alternative, pursuant to 28 U.S.C. § 1404, the Government moves to sever all claims relating to sites located outside of Michigan and transfer the claims to eight other districts, again dividing this single litigation into nine separate actions, purportedly for judicial economy and the convenience of the parties and witnesses.

The Government's Motion must be denied for two reasons.  First, Plaintiffs are appropriately joined pursuant to Rule 20 (permissive joinder).  The Valero Companies assert, among other common allegations, a common theory of CERCLA liability arising from the Government's national policy of control over the entire refining industry during World War II.  The Government incurred liability because it subjected each of the refineries to the same national plan and policies of control as executed by the Petroleum Administration for War ("PAW").  Moreover, each site presents common issues of fact relating to Government control and involvement at

the refineries and common issues of law relating to the proper standard for the Government's liability as an operator of the refineries.  Second, the Government does not, and cannot, meet its heavy burden for severance and transfer under § 1404.  Maintaining a single action is clearly more efficient and convenient for the parties, particularly in this expert-driven, historical contamination case.  Severance would create significant repetition and inefficiencies, waste party and court resources, and prejudice the Valero Companies.  As such, the Motion must be denied.

## BACKGROUND

In its Motion, the Government fundamentally misconstrues the facts and allegations in the First Amended Complaint by stating:

> The allegations in the First Amended Complaint have one common theme: that immediately prior to and during World War II, the United States operated or arranged for disposal of hazardous substances at the twelve refineries, and therefore is responsible for a portion of the cleanup costs incurred at these sites. This theory is where the commonalities end.

ECF No. 13 at 1-2.

In fact, this is where the commonalities begin.  The Valero Companies are wholly-owned subsidiaries of Valero Energy Corporation.  *See* ECF No. 5.  The Valero Companies' claims are brought against a single defendant, the Government, a common operator of all the refineries, and arise from the Government's stated national policy of control over the refineries.  As Ralph Davies, Deputy Administrator of PAW during World War II, stated:

2

> The demands for refined products under today's conditions—demands which are on the must list—so disrupt normal operation, and transportation shortages so complicate movement, that it is clearly impossible to go along without scheduling from a central source the operating practice of each refinery. . . .  Such a thing as a completely free economy is no longer possible, for obvious reasons.  Refinery operation must be geared to production, transportation, and war-demand programs, and be guided from Washington.

Exhibit A at p. 39.  The Government's national policy of control arose pursuant to the same statutory authority.  *See* ECF No. 4 at ¶¶12-20.  And the Government exercised its control over the Valero Companies' refineries in a common, core manner, "by controlling and directing the following, *inter alia*, at the refinery level: (i) the allocation—by type and amount—of crude oil and other feed stocks, without which a refinery could not run; (ii) the procurement priorities to obtain services, equipment and parts required to keep refineries operating; (iii) the types and specifications of the war-related products to be manufactured; (iv) the levels of production for each of those products; (v) the price of the products and the profits made; and (vi) to whom the products would be sold within the Government-controlled supply chain."  ECF No. 4 at ¶ 22.

Although some elements of the case are indeed site-specific, such as site-specific cleanup costs and certain specific instances of additional control over a refinery, the Valero Companies will address these limited issues with common company representatives and experts across all the refineries.  Because the lawsuit involves contamination stemming from World War II operations, the case will

3

inherently be expert-intensive and common experts will be retained for all 12 sites. *See* Exhibit B, Gravel Affidavit.  The Valero Companies also have some common officers who will likely testify in this case.  *See* Exhibit C, George Affidavit.

The Valero Companies properly joined in bringing this single lawsuit in the Eastern District of Michigan because it makes good sense to do so.  Litigating nine fundamentally similar lawsuits in nine separate districts across the country, as the Government asks this Court to do, unnecessarily increases the costs of pursuing common claims by creating repetition and inefficiency for the courts and the parties. Thus, the Motion must be denied.

**ARGUMENT**

**I.     Joinder Is Appropriate Under Federal Rule of Civil Procedure 20.**

While the Government accurately recites the general rules of permissive joinder under Federal Rule of Civil Procedure 20 ("Rule 20"), it conveniently ignores the purposes of Rule 20 and the strong judicial preference to join, rather than sever, claims and parties.

"Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).  "'The purpose of [Rule 20] is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.

4

Single trials generally tend to lessen the delay, expense and inconvenience to all concerned.'" *Patrick Collins, Inc. v. John Does 1-21,* 282 F.R.D. 161, 166 (E.D. Mich. 2012) (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974)).  "The permissive joinder rule is to be construed liberally in order to promote trial convenience and to prevent multiple disputes."  *Patrick Collins, Inc. v. John Does 1-21,* 286 F.R.D. 319, 321 (E.D. Mich. 2012) (citation omitted).

Here, the Valero Companies allege, among other common facts and legal theories, that the Government incurred CERCLA liability when it operated the Valero Companies' refineries as part of a systematic national policy of wartime refinery industry control.  ECF No. 4 at ¶¶ 21-28.  Taken as true, as the Court must do at this stage, the Valero Companies clearly satisfy the requirements of Rule 20, particularly given the strong judicial preference for joinder outlined above.

## A.   Plaintiffs' Claims Arise Out of the Same Series of Transactions and Occurrences.

The Valero Companies are properly joined under Rule 20(a)(1)(A) because their claims arise out of the same series of transactions and occurrences.  In this District,

> Transaction is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.[] Therefore, Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding.

*Patrick Collins, Inc.,* 282 F.R.D. at 167 (citations omitted). Whether litigation arises from the same transactions or occurrences depends on the factual background of a claim. *Proctor v. Applegate,* 661 F.Supp.2d 743, 779 (E.D. Mich. 2009).

The underlying facts of this case, and the series of transactions giving rise to the Valero Companies' claims, are common across all the refineries. The Valero Companies allege that the Government developed a highly coordinated national policy of control over the entire refining industry to meet wartime production needs and shortages. ECF No. 4 at ¶¶ 12-20. The Government executed that national policy by authorizing PAW to operate each of the refineries. *Id.* PAW carried out its broad authority by controlling and directing virtually every aspect of the refineries' operations. *Id.* at ¶¶ 21-28.

The Government's own case law demonstrates joinder is appropriate in this case. The Government relies on two cases in arguing for misjoinder under Rule 20: *Proctor v. Applegate,* 661 F.Supp.2d 743 (E.D. Mich. 2009) and *Coughlin v. Rogers,* 130 F.3d 1348, 1350 (9th Cir. 1997). The Government cites both cases for the proposition that plaintiffs who "allege that a defendant 'subjected them to the same or similar treatment'" are nevertheless misjoined "where the details of and reasons for the alleged treatment vary from plaintiff to plaintiff." ECF No. 13 at 6.

*Proctor* does not support the Government's position. It involved the joinder of five individual prisoners with claims against more than 40 different defendants

6

across multiple unrelated prisons in a civil rights case.  There, the court relied on another case noting "the pervasive impracticalities associated with multiple-plaintiff prisoner litigation, which militates against permissive joinder even if it were otherwise allowed by Rule 20(a)."  *Proctor,* 661 F.Supp.2d at 780 (citing *Boretsky v. Corzine*, 2008 WL 2512916, *4 (D.N.J. 2008)).  "[P]risoners are 'not in the same situation as other non-prisoner joint plaintiffs; prisoners' circumstances make joint litigation exceptionally difficult.'"  *Id.* (quoting *Boretsky*, 2008 WL 2512916 at *6).  The court further noted the prisoner-specific legislative requirement for the exhaustion of administrative remedies in finding joinder was inappropriate.  *Id.* (citation omitted).  Unlike *Proctor*, this case involves the permissive joinder of refining companies that share a common parent, subject to the normal, liberal applications of Rule 20.

*Coughlin* is equally distinguishable.  In *Coughlin*, 49 plaintiffs made "the mere allegation of general delay," which the court found was "not enough to create a common transaction or occurrence."  130 F.3d at 1350.  In the next paragraph, which the Government ignores, the court stated:

> Plaintiffs do not allege that their claims arise out of a systematic pattern of events and, therefore, arise from the same transaction or occurrence. Plaintiffs do not allege a pattern or policy of delay in dealing with all applications and/or petitions by the INS.  Rather, Plaintiffs merely claim that, in specified instances, applications and petitions have not been addressed in a timely manner. . . .  Thus, Plaintiffs' claims are not sufficiently related to constitute the same transaction or occurrence.

*Id.* (citation omitted).  Unlike the plaintiffs in *Coughlin*, the Valero Companies allege that the Government incurred liability at each of the refineries precisely because there was a systematic, nationwide plan and policy of refinery control during the relevant wartime period.  ECF No. 4 at ¶¶ 12-28.  In other words, the Valero Companies allege the precise standard *Coughlin* articulates supports joinder under Rule 20.

The Supreme Court and other courts have also held that claims arising from state-wide and company-wide policies are all considered to arise out of the same transaction or occurrence.  *See, e.g.*, *United States v. Mississippi*, 380 U.S. 128, 142-43 (1965) (holding that joinder of registrars who denied African-Americans the right to vote was proper because the complaint charged that they were doing so as part of a state-wide policy); *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333-34 (8th Cir. 1974) (reversing district court and holding that claims arising from a company-wide policy designed to discriminate against individuals arises out of the same transaction or occurrence); *Hohlbein v. Heritage Mut. Ins. Co.*, 106 F.R.D. 73, 78-79 (E.D. Wis. 1985) (holding that four plaintiffs could join in one action against a former employer because the claim was based on a company-wide policy).  Thus, claims arising from actions undertaken pursuant to a policy are considered to be of the same transaction or occurrence.  Therefore, the Valero Companies' claims arise out of the same transaction and occurrence, satisfying the first prong under Rule 20.

## B.      Plaintiffs' Claims Present Common Questions of Law and Fact.

The Valero Companies are properly joined under Rule 20(a)(1)(B) because their claims present common questions of law and fact. FED. R. CIV. PROC. 20(a)(1)(B) (joinder is appropriate when "*any* question of law *or* fact common to all plaintiffs will arise in the action") (emphasis added). In its Motion, the Government attempts to limit the commonalities among the Valero Companies' claims and allegations to "the basic common fact that all of the refineries sold petroleum products to the United States during World War II . . . ." ECF No. 13 at 10. The Government's reading of the First Amended Complaint is more than a bit narrow.

In fact, the First Amended Complaint is replete with numerous common issues of fact that this Court will need to evaluate. The Valero Companies, all wholly-owned subsidiaries of Valero Energy Corporation, brought claims against a single defendant, the Government. The Valero Companies' claims arise from the Government's express national policy of control over the refineries during World War II, which was executed by PAW pursuant to the same statutory authority. *See* ECF No. 4 at ¶¶ 12-20. PAW exercised its control over the Valero Companies' refineries in a common, core manner, by controlling and directing, among other things, what was produced, how much was produced, to whom products were sold and at what price. *Id.* at ¶ 22. In doing so, the Government's control of the Valero Companies' refineries was pervasive and absolute. *Id.* at ¶ 23 ("Perhaps the only

thing the Government did not do was to manually turn the levers and valves at the refineries."). While the Government's national policy, and its execution of that policy, impacted all of the refineries in the same manner, even the more specific allegations raised in the First Amended Complaint have significant overlap. For example, the same wartime product restrictions on motor gasoline production that significantly limited refinery profits and product runs applied to all of the refineries. *Id.* at ¶¶ 33, 41, 48, 72, 87, 116 and 122. Ultimately, the First Amended Complaint alleges that the Government is liable as an operator under CERCLA through substantially the same set of facts at each of the refineries.

Additionally, as the Government reluctantly acknowledges, common issues of law will also arise in this litigation. *See* ECF No. 13 at 9, 24 (discussing CERCLA and "an overlapping legal theory"). For example, the Court will need to apply the appropriate legal standard for CERCLA operator liability to the Government's control of the refineries. *See United States v. Bestfoods*, 524 U.S. 51 (1998); *United States v. Township of Brighton*, 153 F.3d 307, 316 (6th Cir. 1998) ("[M]ere regulation does not suffice to render a government entity liable, but actual operation (or 'macromanagement') does."). Simply stated, this is a CERCLA case,[1] and the Court will need to apply federal CERCLA law to the claims in this case.

---

[1] The Government argues that this case, as filed, is "unwieldy" or "unmanageable." ECF No. 13 at 14. The Government deliberately exaggerates the complexity of this CERCLA litigation. It is not uncommon for CERCLA litigation to include far more

In its Motion, the Government goes to great lengths to point out the subtle differences among the Plaintiffs and their refineries, while ignoring the obvious commonalities set forth in the First Amended Complaint. For example, the Government states that "each refinery is alleged to have produced a different assortment of petroleum products[,]" ECF No. 13 at 8, but ignores that the Government required the production of such products and mandated even the minute details of their production at each refinery. In other words, the differences raised by the Government are the result of the refineries following the Government's own mandates issued pursuant to one coordinated national plan.

More importantly, the distinctions raised by the Government do not render joinder improper. Not all claims in the First Amended Complaint must satisfy Rule 20, as joinder is appropriate if "at least one claim . . . arises out of the same transaction or occurrence and presents questions of law or fact common to all[.]" *Green v. Callahan,* No. 2:14–CV–11453, 2014 WL 1652335, *2 (E.D. Mich. April 23, 2014) (citing *Proctor,* 661 F.Supp.2d at 778); FED. R. CIV. PROC. 20(a)(1)(B) (joinder is appropriate when "*any* question of law *or* fact common to all plaintiffs

_____

parties and a far broader scope than the current action. Moreover, in this case, the Valero Companies pursue only the portion of costs attributable to the Government's operation of the refineries during the relevant time period, *i.e.*, the Government's fair share. Accordingly, the Government's concern with other hypothetical potentially responsible parties, to the extent they might exist, is irrelevant to the issue of joinder at the outset of this litigation.

will arise in the action") (emphasis added).[2]   Accordingly, the Valero Companies and their claims are appropriately joined in this case under Rule 20.

### C.     Dismissal of Plaintiffs and Claims Is Inappropriate.

Dismissal of certain Plaintiffs and claims is not appropriate in this case simply because the permissive joinder standard of Rule 20 has been satisfied.  Even if the requirements of Rule 20 were not satisfied, dismissal of Plaintiffs and claims relating to sites not based in Michigan would be inappropriate because dismissal would result in actual harm to the Valero Companies.

The Government notes that courts may drop <u>misjoined</u> parties from a litigation if it is "without 'gratuitous harm to the parties,' such as where the dismissed parties 'lose the ability to prosecute an otherwise timely claim' or where dismissal is with prejudice."  ECF No. 13 at 13 (citation omitted).  Then, the Government downplays the impact dismissal would have on the Valero Companies, arguing that "[n]othing in the Amended Complaint suggests that the statute of limitations will have run since the filing of the initial complaint on any of Plaintiffs' claims if the misjoined plaintiffs and their claims are dismissed and those plaintiffs are required to file elsewhere."  ECF No. 13 at 13-14.

---

[2] For example, the Government erroneously suggests allegations of ownership liability at one site, the Houston Refinery, in addition to allegations of operator control, are relevant to the issue of permissive joinder.  ECF No. 13 at 9.

12

In making this argument, the Government ignores the series of tolling agreements that it entered into with certain of the Valero Companies in April 2016. The tolling agreements expired in April 2017, just days after this case was filed. Accordingly, if the Court grants the Government's requested relief, the Valero Companies could become exposed to new statute of limitations issues potentially rendering otherwise timely claims untimely. In other words, if dismissed, the Valero Companies could potentially lose months of statute-of-limitations protections. Clearly, the protections of the tolling agreements are of value to the Valero Companies, even if the Government does not agree.

## II.    Transfer Is Inefficient and a Waste of Party and Judicial Resources.

In the alternative, the Government moves to sever and transfer the Valero Companies' claims relating to refineries located outside Michigan under 28 U.S.C. § 1404(a). In articulating a standard for transfer, the Government fails to mention its heavy burden as the moving party. "The burden is on the moving party to establish the need for a change of forum." *Sullivan v. Tribley,* 602 F.Supp.2d 795, 799 (E.D. Mich. 2009) (citation omitted). "This burden is a heavy one and requires the moving party to show that the balance of factors weighs strongly in favor of transfer." *Steelcase, Inc. v. Smart Technologies, Inc.,* 336 F.Supp.2d 714, 719 (W.D. Mich. 2004) (citation omitted). Accordingly, the Government must show "by a preponderance of the evidence, that fairness and practicality strongly favor

13

transfer[.]"  *See Performance Contracting, Inc. v. DynaSteel Corp.*, No. 12-10165, 2012 WL 1666394, *1 (E.D. Mich. May 9, 2012).

"In deciding a motion to transfer venue, the Court must determine whether the action could have been brought in the proposed transferee district, whether a transfer would promote the interests of justice, and whether a transfer would serve the parties' and witnesses' convenience." *Performance Contracting*, 2012 WL 1666394 at *3.[3]  "Factors to be considered include:  (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Id.* (citations omitted).  "To establish these factors, parties should support their assertions with citations to the record; conclusory allegations of a party will not suffice." *Thomas v. Home Depot, U.S.A., Inc.,* 131 F.Supp.2d 934, 937 (E.D. Mich. 2001) (citation omitted).

---

[3] Due to the broad venue provision of CERCLA, it is true that this case could have been brought in other districts, but the Eastern District of Michigan makes the most sense.  The most sites of the 12 Valero Companies' refineries are located in Michigan and joinder serves judicial economy by avoiding repetition while keeping the litigation together in the district where the most sites are located.

14

In its Motion, the Government makes only conclusory and vague assertions that do not, and cannot, satisfy its heavy burden to show that the balance of these factors "weighs strongly in favor of transfer." In fact, dividing this action into nine separate cases would significantly complicate the litigation as a whole and substantially raise costs for both parties due to repetition and inefficiency, regardless of where the actions are refiled. In this expert-intensive historical contamination case, the Valero Companies' common experts will need to issue duplicative reports, give duplicative depositions, and travel to multiple districts to give, at least in part, identical testimony in nine separate actions. Exhibit B, Gravel Affidavit, at ¶ 9. In addition, the Valero Companies share officers with knowledge of corporate history and remediation work that would be duplicative in multiple districts. Exhibit C, George Affidavit, at ¶¶ 3-6. Discovery and motions practice will almost certainly be duplicative and wasteful, particularly at the outset of proceedings. Separate litigation will tie up nine courts in nine districts, which cannot be a superior method to proceeding with one focused litigation effort in the district where the most sites in the First Amended Complaint are located.

### A. The Convenience of Witnesses Weighs Against Transfer.

"A party seeking to transfer a case should specify the key witnesses and the nature of their testimony." *Performance Contracting,* 2012 WL 1666394 at *4. "Only when the [c]ourt is armed with such information can it properly assess the

convenience of the witnesses." *New World Systems Corp. v. Jones,* No. 06-11603, 2009 WL 996954, *5 (E.D. Mich. Apr. 14, 2009). Because the Government has failed to present the name and specific testimony of a single witness, this factor weighs against transfer. *Id.* at *6 ("[W]ithout a specific list of witnesses' names and an outline of what material testimony the witnesses would provide, this Court cannot properly assess the convenience of the witnesses. The convenience of witnesses factor does not weigh in Defendants' favor.").

Conversely, the Valero Companies have identified multiple witnesses that would benefit from a single litigation. The Valero Companies have retained the services of FTI Consulting, Inc. A.J. Gravel is an expert witness that will provide material testimony as to, *inter alia*, the historical contamination at the various refineries, the source of that contamination, Government control, damages modeling, and other relevant information. *See generally*, Exhibit B, Gravel Affidavit. Forcing the Valero Companies' shared expert to travel to and appear in nine different districts is unduly cumbersome, duplicative, expensive, impractical and inconvenient. Additionally, Tim George is a Vice President whose responsibilities include managing the environmental liabilities of the Valero Companies and who oversees the remediation work being conducted across all of the Valero Companies' refineries in the First Amended Complaint. *See* Exhibit C, George Affidavit, at ¶¶ 2-3. Forcing the Valero Companies' shared remediation

personnel to appear in nine different districts is similarly inconvenient, burdensome and expensive.  Given the inconvenience that multiple litigations would present for the common key witnesses shared by the Valero Companies across all 12 sites, this factor weighs strongly against transfer.

### B.   The Location of Relevant Documents and Relative Ease of Access to Sources of Proof Weighs Against Transfer.

The Government argues that "the parties will need to examine documents concerning the history of operations at each refinery and the costs that Plaintiffs have incurred in cleaning up the sites, and the United States *expects* that most such documents will be located at the respective refineries, at Plaintiffs' corporate offices, *or* in the offices of the state regulators overseeing cleanup efforts."  ECF No. 13 at 19 (emphasis added).  Quite simply, the Government has not yet identified any evidence that would render transfer appropriate, to the extent it may exist at all.  *See Central Transport Intern., Inc. v. Alcoa, Inc.,* No. 06-CV-11913-DT, 2006 WL 2844171, *4 (E.D. Mich. Sept. 29, 2006) ("Although both parties generally state that their choice of forum allows for ease of access to relevant documents, neither party discloses to the court with any specificity either the number of documents or their relevance to this case.  Thus, the court is unable to adequately weigh this factor.").  "Moreover, access to documents is a less significant factor in this 'era of photocopying, fax machines, and Federal Express.'"  *Id.* (citation omitted).  "As a result, 'this factor should thus be limited to the extent that the files could not be

17

produced in the alternative forum.'" *Performance Contracting*, 2012 WL 1666394 at *5 (citation omitted).

The relative ease of access to sources of proof during litigation "is highly contingent upon the location of the [p]laintiff's principal place of business." *New World Systems Corp.,* 2009 WL 996954 at *6. The Valero Companies share a corporate headquarters and principal place of business at One Valero Way in San Antonio, Texas. Moreover, the bulk of the evidence and available historical records are currently hosted electronically and available in any forum. *See* Exhibit B, Gravel Affidavit, at ¶ 6; Exhibit C, George Affidavit, at ¶ 4. Producing documents in one action would be favorable to producing documents in nine separate actions where much of the evidence applies to multiple sites. The costs of document production and discovery would undeniably decrease if transfer is denied. As such, this factor weighs against transfer.

## C.      The Convenience of the Parties Weighs Against Transfer.

"[T]ransfer is not appropriate if the result is simply to shift the inconvenience from one party to another." *Sullivan,* 602 F.Supp.2d at 800 (citation omitted). The Government must clearly demonstrate that litigating nine separate actions is more convenient for both parties and not just the Government. This is simply not the case.

As the Government reluctantly concedes, it is uniquely ubiquitous and may be found anywhere in the United States. ECF No. 13 at 17 n.2. This renders the

Government better-suited to litigate nine similar, contemporaneous actions in nine districts across the country. The Government has legal counsel in every district of every state. Meanwhile, the Valero Companies have obtained counsel licensed to practice in the Eastern District of Michigan and would need to obtain new counsel in the eight additional districts to which the Government seeks transfer. *See Central Transport Intern.,* 2006 WL 284471 at *3 (considering location of counsel in finding convenience of the parties factor neutral). Moreover, the Government faces no real burden in litigating this single action in the Eastern District of Michigan. Even if transfer is granted, the Government will still need to litigate in Michigan.

Simply put, this action would be more convenient if tried as a single case by avoiding the costs associated with duplicitous appearances, discovery, and motions practice. As such, this factor weighs against transfer.

### D. The Locus of Operative Facts Is, at a Minimum, Neutral.

The Government strongly argues that the locus of operative facts supports transfer because of the refineries' locations. Given the historical nature of this case, however, the location of the refineries is not a significant factor. For example, the Government raises the issue that the refineries' locations serve as an *expected* location of sources of proof. ECF No. 13 at 19. But, in reality, evidence and sources of proof are available in a central filing system in San Antonio and others are currently available electronically, having been collected from archives and records

19

repositories across the country. *See* Exhibit B, Gravel Affidavit, at ¶ 6; Exhibit C, George Affidavit, at ¶ 4.

Similarly, the Government argues that litigation near the refineries' locations serves local interests because that is "where all of the contamination at issue is located and where any harm associated with that contamination will be experienced." ECF No. 13 at 19, 21. This is a red herring. This case is not about unaddressed contamination or who will perform cleanup that may impact local concerns. The Valero Companies have performed, or are performing, required cleanups. This case is about requiring the Government to pay its fair share—and no more—of the costs incurred by the Valero Companies.

In addition, where a "case involves events that have occurred in a number of states," the importance of this factor is diminished and should receive only slight weight, even if a key event occurs in a particular forum. *Central Transport Intern.,* 2006 WL 2844171 at *3. Such is the case here. The Government exercised control over the nation's refineries from Washington DC, PAW regional district offices in, for example, Chicago, San Francisco and Dallas, and at the refineries themselves. Evidence of that control, as discussed above, is currently available electronically. In any event, the action, as a whole, was brought in the district where the most operative facts for the most sites exist. As such, this factor weighs against transfer, though it may be of diminished weight.

### E.   The Availability of Process to Compel the Attendance of Unwilling Witnesses Is Neutral.

"[T]he only relevant witnesses under this factor are non-party witnesses." *Performance Contracting,* 2012 WL 1666394 at *7. The Government has failed to specifically identify any non-party witnesses that are unwilling or unable to testify in the Eastern District of Michigan. In fact, the Government fails to specifically identify any witnesses at all. As a result, the Government has not met its burden and this factor is neutral. *Id.* ("Because Defendants have not identified any witness who resides outside the 100–mile subpoena limit of this Court and who is unwilling to incur the burden of traveling to Michigan to testify, they have not met their burden of demonstrating that this factor weighs in favor of transferring the case[.]"); *see also Thomas*, 131 F.Supp.2d at 940 (holding that defendant did not show this factor weighed in favor of its motion when defendant named a witness, but made no showing that the witness was necessary or unwilling to voluntarily testify).

### F.   The Relative Means of the Parties Weighs Against Transfer.

The Government is uniquely capable of and advantaged by litigating multiple lawsuits anywhere in the country. The Government maintains attorneys and significant resources in every district in the United States. The Valero Companies do not. To the extent that the Government has the means to more easily litigate nine actions in nine districts at the same time, this factor weighs against transfer.

### G.   The Forum's Familiarity with Governing Law Is Neutral.

When claims are based on federal law, "both forums are equally familiar with the governing law." *William M. Yarbrough Foundation v. Garcoa Laboratories, Inc.,* No. 1:11-CV-907, 2013 WL 4068176, *7 (W.D. Mich. Aug 12, 2013).  Because the Valero Companies bring a CERCLA cost recovery action here, this factor is neutral.  It is important to note, however, that transfer of this single action to nine separate districts creates a substantial risk of non-uniform decisions across applications of common federal law.

### H.   The Weight Accorded Plaintiffs' Choice of Forum Is Substantial and Weighs Against Transfer.

A plaintiff's choice of forum is normally entitled to substantial weight in the transfer analysis.  "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  This presumption "may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Performance Contracting,* 2012 WL 1666394 at *8 (citations omitted).  Here, Plaintiffs have chosen the Eastern District of Michigan because it is the most convenient forum for the parties as the home forum for the most sites in the First Amended Complaint.  As such, there is a significant tie between Plaintiffs and the selected forum and it is entitled to substantial deference.

22

Moreover, where Congress expresses an intent to broaden the venue options available to a plaintiff or class of plaintiffs in order to further the purposes of a statute, a plaintiff's choice of venue "must be afforded a heightened level of deference, beyond the usual deference afforded plaintiffs under § 1404(a) analysis." *Winnett v. Caterpillar Inc.*, 2006 WL 1722434, *5 (M.D. Tenn. June 20, 2006); *see also Abbott v. Lockheed Martin Corp.*, 2007 WL 844903, *2 (S.D. Ill. Mar. 20, 2007) (interpreting an identical "may be found" venue provision in a class action as affording increased deference to plaintiff's choice of forum due to Congressional intent to broaden venue options). Here, Plaintiffs' choice of forum is actually entitled to more deference than normal, not less or none as the Government contends.

## I.     Trial Efficiency and the Interests of Justice Weigh Heavily Against Transfer.

The Government argues that because the standard for CERCLA liability is site-specific, "it is unlikely that there are meaningful efficiencies to be gained by a trial of all of Plaintiffs' claims before one court in a single action." ECF No. 13 at 22. The Government overlooks a number of commonalities across all claims that would be unnecessarily duplicated in each of the nine actions if transfer were granted.

First, the claims allege a common theory of liability stemming from a national policy of wartime Government control of the refineries. All evidence that applies to this nationwide plan would need to be reproduced in discovery nine times if the

23

Government's relief is granted. Other discovery requests are likely to be repetitive for each claim as well. Motion practice will likely be duplicative, particularly at the outset of litigation. Moreover, the Valero Companies and the Government will need to present common experts and other witnesses in each case. Ultimately, the Government cannot reasonably argue that these are not meaningful efficiencies. *See Orton v. Johnny's Lunch Franchise LLC,* No. 10-cv-11013, 2012 WL 2115841, *1 (E.D. Mich. June 8, 2012) ("[A]s a matter of preserving scarce judicial resources, the Court is loath to prolong bifurcated litigation of similar claims and issues in separate courts. Doing so taxes the courts as well as the parties, causing the needless waste of time and financial resources").

The interests of justice also weigh heavily against transfer. If the Court transfers these nearly identical cases to nine districts, there is a serious risk of non-uniform applications of CERCLA law. *See Distributing Corp. of Am. v. Deere & Co.,* No. 87-3332, 1987 WL 61946, *2 (E.D. Mich. Nov. 16, 1987) ("The most persuasive consideration, however, is the fact that the action now pending in the Western district involves issues of fact and law that are quite similar to those involved in this case" and "consolidation will facilitate more efficient discovery in both actions, will save time and money on the part of witnesses, will avoid duplicitous litigation, and will avoid the risk of inconsistent results."); *Orton,* 2012 WL 2115841 at *1 ("Dual litigation also creates the risk of inconsistent

judgments."). Rather than trying the same and similar issues multiple times in multiple districts, this court should maintain the instant action in the Eastern District of Michigan.

## CONCLUSION

For the foregoing reasons, the Valero Companies respectfully request that the Court deny the Government's Motion to Dismiss Misjoined Plaintiffs and Claims or, in the Alternative, to Sever and Transfer Claims.

Dated:  September 22, 2017

Respectfully submitted,

*/s/Givonna S. Long*
GIVONNA S. LONG (IL #6290076)
KELLEY DRYE & WARREN LLP
333 West Wacker Dr., Suite 2600
Chicago, IL  60606
Telephone:  (312) 857-7070
glong@kelleydrye.com

JOHN A. FERROLI (MI # 35869)
DYKEMA GOSSETT PLLC
300 Ottawa Avenue, N.W., Suite 700
Grand Rapids, MI 49503-2306
Telephone:  (616) 776-7542
jferroli@dykema.com

*Attorneys for Plaintiffs, MRP Properties Company, LLC, Valero Refining Company-Oklahoma, Valero Refining Company-Tennessee, L.L.C., The Premcor Refining Group Inc., Valero Refining-Texas, L.P. and Ultramar Inc.*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of September, 2017, I electronically filed the foregoing PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS MISJOINED PLAINTIFFS AND CLAIMS OR, IN THE ALTERNATIVE, TO SEVER AND TRANSFER CLAIMS via the Court's CM/ECF system, which sends a Notice of Electronic Filing to counsel of record.

Dated:  September 22, 2017

*/s/Givonna S. Long*
GIVONNA S. LONG (IL #6290076)
KELLEY DRYE & WARREN LLP
333 West Wacker Dr., Suite 2600
Chicago, IL  60606
Telephone:  (312) 857-7070
glong@kelleydrye.com