UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MRP PROPERTIES, LLC, et al.,

                Plaintiffs,                Case No. 17-cv-11174

v.                                        Honorable Thomas L. Ludington

UNITED STATES OF AMERICA,

                Defendant.

_____/

**ORDER DENYING MOTION TO DISMISS AND MOTION TO TRANSFER AND
SETTING DEADLINE TO RESPOND TO PLAINTIFFS' COMPLAINT**

Plaintiffs MRP Properties, et al., filed its complaint against Defendant United States of America in this Court on April 13, 2017, under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA). Plaintiffs seek payment of response costs arising from investigation and cleanup of contamination at Plaintiffs' refineries, contending that the United States exercised control over the refineries before and during World War II. Compl., ECF No. 1. Plaintiffs did not initially serve the Complaint on Defendant, but filed an Amended Complaint on July 5, 2017, which was served on Defendant. Am. Compl, ECF No. 4.

Defendant filed the instant motion to dismiss all Plaintiffs other than MRP Properties as improperly joined under Rule 20 or, in the alternative, to sever and transfer those Plaintiffs to a proper venue. Mot. Dismiss, ECF No. 13; Fed. R. Civ. P. 20. On August 25, 2017, Defendant filed a motion to stay their answer deadline until thirty days after the Court rules on the pending motion to dismiss. ECF No. 14. The parties stipulated to extend the answer deadline from September 5 to October 10, 2017. ECF No. 16. On October 6, 2017, the Court entered an order

staying Defendant's answer deadline until seven days after the Court's decision on the instant motion to dismiss.

## I.

Plaintiffs are six wholly owned subsidiaries or affiliates of the Valero Energy Corporation. *See* Discl. Corp. Aff., ECF No. 5. Plaintiffs collectively own twelve refinery sites (the Sites) located in Michigan, Oklahoma, Kansas, Tennessee, Illinois, Texas, and California. With one exception, Plaintiffs did not own the refineries during WWII, but acquired the refineries afterward. *Id.* Plaintiffs allege that before and during WWII, the Government controlled the operations of the refining industry. *Id.* at 5. Pursuant to Executive Order 9276, President Roosevelt established the Petroleum Administration for War (PAW), and vested PAW with broad discretionary authority to carry out the national plans, policies, and objectives for the petroleum industry. *Id.* at 7. The PAW divided the nation into districts, and implemented the national policy at a regional and refinery level by orders and directives controlling operations and refinery yields. *Id.* at 8. The executive order provides, in part:

> "[t]here is established a Petroleum Administration for War, at the head of which shall be a Petroleum Administrator who shall be directly responsible to the President . . . The Administrator shall: a. Subject to the provisions of this order, establish basic policies and formulate plans and programs to assure for the prosecution of the war the conservation and most effective development and utilization of petroleum in the United States and its territories and possessions, issue necessary policy and operating directives to parties engaged in the petroleum industry . . . c. (1) Obtain from the Departments of War and the Navy, the Office of Lend-Lease Administration, the Department of State and the Board of Economic Warfare, the several divisions and branches of the War Production Board, and such other Federal departments and agencies as may be appropriate, estimates of the amounts of petroleum which will be required from the United States, its territories and possessions, to meet direct and indirect military, and essential industrial and civilian, requirements; and compile and analyze such estimates and submit them to the War Production Board with recommendations for the allocation of petroleum to meet such requirements. (2) Prepare and recommend to the War Production Board estimates of the quantities and kinds of material needed by the petroleum industry to produce, refine, store, distribute

(excluding transportation), or otherwise make available the amount of petroleum recommended by the Administrator for allocation by the War Production Board.

Exec. Order No. 9276, 7 FR 100912 (1942).

Plaintiffs allege that PAW proceeded to operate the nation's refineries by directing and controlling, at the refinery level: "(i) the allocation—by time and amount—of crude oil and other feed stocks . . .; (ii) the procurement priorities to obtain services, equipment and parts . . .; (iii) the types and specifications of war-related products to be manufactured; (iv) the levels of production for each of those products; (v) the price of the products and profits made; and (vi) to whom the products would be sold within the Government-controlled supply chain." *Id.* at 9. Plaintiffs allege that by serving as the "de facto operator" of the refineries, and controlling the inputs and outputs, the Government's control "necessarily extended to the generation of waste and its release into the environment." *Id.* at 11.

Plaintiffs' amended complaint further alleges that the Government's control of all inputs and outputs necessarily impacted the hazardous waste profile of their refineries. Plaintiffs also contend that the Government specifically exercised control over the hazardous waste management process itself by controlling approval of war-time construction projects, denying approval for some projects "relating to pollution control that were deemed non-essential to the war effort" while approving other projects. *Id.* at 10. The Government also "oversaw the amount and type of wastes (i.e. 'losses') generated (and ultimately released)" and tracked production statistics including production yields and losses. *Id.* at 15.

In sum, the Government did everything other than "manually turn the levers and valves." *Id.* at 9. Thus, Plaintiffs contend that the level of control exercised by PAW was "well beyond the Government's regulatory role," and that the Government is appropriately responsible as an

operator under CERCLA. *Id.* at 10. As such, Plaintiffs contend the Government must pay its share of response costs that Plaintiffs have incurred and continue to incur to dispose of hazardous waste arising from the Government's operation of their refineries during the wartime period. *Id.* at 15.

Plaintiffs' first claim for relief seeks response cost recovery under CERCLA section 107(a), codified at 42 U.S.C. 9607(a). Plaintiffs assert a second claim for relief arising under CERCLA section 113(g)(2), codified at 42 U.S.C. 9613(g)(2), and the declaratory judgment act, 28 U.S.C. 2201(a), seeking a declaratory determination binding the Defendant in subsequent actions to pay response costs or damages.

## II.

Defendant moves to dismiss all Plaintiffs other than MRP properties (MRP) as improperly joined, and to dismiss the claims asserted by MRP that concern refineries outside of Michigan. Mot. at 1, ECF No. 13. If Defendant's requested relief is granted, the only claims remaining would be MRP's claims concerning the Leonard Alma, Mid-West Alma, and Roosevelt Mount Pleasant refineries, all of which are located in the Eastern District of Michigan. In the alternative, Defendant moves to sever all other parties and claims and transfer them to the districts where the refineries are located. *Id.*

## A.

Defendant argues that Plaintiffs are improperly joined under Rule 20(a)(1). Fed. R. Civ. P. 20(a)(1)(A). Defendant asserts that Plaintiffs' claims do not arise out of the same transaction, occurrence, or series of transactions or occurrences, nor do they present "predominantly the same question of law or fact." Def. Br. at 13. Defendant notes that no refinery is owned by a common subsidiary or affiliate, and that there is a "different factual bases underlying each claim" that will

require "substantial site-specific discovery relating to each refinery." *Id.* at 2. Defendant contends that

> the allegations of the Amended Complaint described refineries that produced a different mix of products, received different production orders from the relevant government agencies . . . were in operation for different lengths of time, were owned or operated by a different combination of entities both during and after World War II, and may have experienced differing levels of hazardous substance releases both during and after World War II.

*Id.* at 10. Defendant underscores a number of other variations between refineries. Each refinery may have had other previous owners or operators who contributed to hazardous waste generation and disposal and could be liable as third party defendants for contribution under section 113(f) of CERCLA, 42 U.S.C. 9613(f)(1). Defendant also highlights a number of site specific details necessary to sustain each Plaintiff's burden of proof under CERCLA to establish recoverable response costs. These include the care exercised in the operation of the refinery, activities undertaken by Plaintiffs to address waste, the necessity of the cleanup costs incurred, their compliance with the National Contingency Plan, and the adequacy of documentation surrounding these costs. *Id.* at 12 (citing *United States v. R.W. Meyer, Inc.*, 932 F.2d 568, 571 (6th Cir. 1991)).

Defendant argues that, even if joinder is proper under Rule 20, fairness and practicality strongly favor a transfer of venue to the districts in which each refinery is located. Defendant believes the balance of factors outlined in *Overland* favor a transfer of venue. *Id.* at 18 (citing *Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000)).

**B.**

Plaintiffs respond that they are properly joined under Rule 20, as their claims present common issues of fact or law and arise from the same series of transactions and occurrences. Pl. Br., ECF no. 20. "Each site presents common issues of fact relating to Government control and

involvement at the refineries and common issues of law relating to the proper standard for the Government's liability as an operator of the refineries." *Id.* at 2.

Plaintiffs contend their claims arise from the same series of transactions or occurrences, because they arise from the same "highly coordinated national policy of control over the entire refinery industry" that was carried out "in a common, core manner, by controlling and directing, among other things, what was produced, how much was produced, to whom products were sold and at what price." *Id.* at 3, 6, 9. Plaintiffs acknowledge the need for site-specific discovery in this case, including specific cleanup costs. *Id.* at 3. Nevertheless, Plaintiffs assert this does not render joinder improper, and intends to address refinery specific factual issues with common company representatives and experts. *Id.* at 3–4.

Plaintiffs also oppose severance and transfer under 28 U.S.C. § 1404(a), and contend that fairness and practicality counsel in favor of permitting their claims to proceed in their chosen forum. *Id.* at 13. They argue that Defendant cannot meet its "heavy burden" as the moving party to "show that the balance of factors weighs strongly in favor of transfer." *Id.* (citing *Sullivan v. Tribley*, 602 F.Supp.2d 795, 799 (E.D. Mich. 2009); *Steelcase, Inc. v. Smart Technologies, Inc.*, 336 F.Supp.2d 714, 719 (W.D. Mich. 2004)).

## III.

### A.

Federal Rule of Civil Procedure 20 provides that persons "may be joined in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). Thus, to join plaintiffs in a single action the two independent requirements of Rule 20

must be met: (1) their claims must be asserted "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) there must be a "question of law or fact common to all plaintiffs." Fed. R. Civ. P. 20(a)(1).

The "transaction-or-occurrence" test of Rule 20(a) "is similar to the transaction-or-occurrence test of Rule 13(a) for compulsory counterclaims, which has been construed as requiring a 'logical relationship' between the claims." *In re EMC Corp.*, 677 F.3d at 1357–58 (quoting *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926)). The "logical relationship" test, in turn, "is satisfied if there is substantial evidentiary overlap in the facts giving rise to the cause of action . . ." *Id.* Courts have applied the "logical relationship" test when interpreting the "same transaction or occurrence" standard not only under Rule 20(a)(2) for joinder of defendants and Rule 13(a) for compulsory counter claims, but also to joinder of plaintiffs under Rule 20(a)(1). *See, e.g.*, *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330 (8th Cir. 1974) ("rule 20 would permit all reasonable related claims for relief by or against different parties to be tried in a single proceeding").

Doubts are to be resolved in favor of joinder. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). That is, "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *Id.*; *see also LASA Per L'Industria Del Marmo Societa Per Azioni of Lasa, Italy v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969) ("The words 'transaction or occurrence' are given a broad and liberal interpretation."). "Rule 20 clearly contemplates joinder of claims arising from a 'series of transactions or occurrences' — a single transaction is not required." *In re EMC Corp.*, 677 F.3d at 1356 (quoting Fed. R. Civ. P. 20(a)).

**B.**

Venue is in the judicial district where either all defendants reside or where the claim arose. *Al-Muhaymin v. Jones,* 895 F. 2d 1147, 1148 (6th Cir. 1990); 28 U.S.C. § 1391(b). CERCLA provides that "[v]enue shall lie in any district in which the release or damages occurred, or in which the defendant resides, may be found, or has his principal office." 42 U.S.C. § 9613(b). For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where the action might have been brought. *See United States v. P.J. Dick, Inc.,* 79 F. Supp. 2d 803, 805-06 (E.D. Mich. 2000); 28 U.S.C. § 1404(a).

In deciding a motion to transfer venue, it must be determined whether the action could have been brought in the proposed transferee district or division, whether a transfer would promote the interests of justice, and whether a transfer would serve the parties' and witnesses' convenience. *P.J. Dick, Inc.*, 79 F. Supp. 2d at 806; *Perceptron, Inc. v. Silicon Video, Inc*., 423 F. Supp. 2d 722, 728-29 (E.D. Mich. 2006). The factors that guide a district court's discretion in deciding whether to transfer a case include: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and interests of justice, based upon the totality of the circumstances. *Overland, Inc. v. Taylor,* 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000).

Section 1404(a), the Supreme Court explains, "is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quotation marks omitted) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

> A district court possesses broad discretion in deciding whether to transfer venue, and the party seeking a transfer under § 1404(a) bears the burden of demonstrating by a preponderance of the evidence that transfer to another district is warranted. To that end the court may examine facts outside the complaint, but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff.

*United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, 677 F. Supp. 2d 987, 991 (W.D. Tenn. 2010).

## IV.

### A.

As an initial matter, it is important to note that the definition of "operator" under CERLA is a central legal question in this case. The term is not specifically defined in the statute, however. Rather, the statute provides a circular definition: "any person . . . operating a facility." *United States v. Bestfoods*, 524 U.S. 51, 56 (1998) (quoting § 9601(20)(A)(ii)). Courts have not defined the term uniformly.

The "indicia of control" test was applied by the Third Circuit Court of Appeals in *FMC Corp. v. U.S. Dep't of Commerce*. 29 F. 3d 833, 843. The Third Circuit determined that the government controlled the "product the facility would produce, the level of production, the price of the product, and to whom the product would be sold," and therefore exercised "substantial control" over plaintiff's production facility so as to subject the government to operator liability. *Id.*

In *Bestfoods*, however, the Supreme Court rejected the "participation-and-control" test for determining direct liability of a parent company as an operator of a facility owned by its subsidiary. *United States v. Bestfoods*, 524 U.S. 51, 70, (1998). The Court stated that, under CERCLA:

> An operator is simply someone who directs the workings of, manages, or conducts the affairs of a facility. To sharpen the definition for purposes of CERCLA's concern with environmental contamination, an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations.

*Id.* at 66–67.

Later that same year, in an unrelated case, the Sixth Circuit Court of Appeals decided *Brighton Township* vacating the district court's ruling that Brighton Township was liable as an operator of the facility and remanding for further proceedings. *United States v. Twp. of Brighton*, 153 F.3d 307, 314 (6th Cir. 1998). The Sixth Circuit found *FMC* instructive, and determined that "mere regulation does not suffice to render a government entity liable, but actual operation (or "macromanagement") does." *Id.* at 316. One panel member concurred in result, but articulated a separate standard for operator liability, because the majority opinion "fail[ed] to define this standard clearly so as to provide the lower courts with direct guidance as to when a governmental entity engages in regulatory activities extensive enough to make it an operator of the facilities in question." *Id.* at 325 (Moore, J., concurring in result). Another panel member dissented in part and concurred in result, noting disagreement with his colleagues "that a governmental entity should be held to a lower threshold level of control which would give rise to liability. Instead, I find that *Bestfoods'* standard should be applied to both corporate form and governmental entities situations." *Id.* at 332 (Dowd, J., dissenting in part and concurring in result).

More recently, an opinion from the Southern District of Texas was released holding that the United States was not an operator of the plaintiff's oil refineries under CERCLA. *Exxon Mobil Corp. v. United States*, 108 F. Supp. 3d 486 (S.D. Tex. 2015). The court interpreted the standard promulgated in *Brighton* as inconsistent with *Bestfoods*: "The distinction that opinion drew between the government-entity and private-entity cases, applying the "regulation" versus "macromanagement" test only when a government entity is involved is not consistent with *Bestfoods*." *Id.* at 422. The court surveyed decisions from other circuits which "have recognized that *FMC's* test is unhelpful after *Bestfoods*." *Id.* at 521. Additionally, in *Lockheed Martin*, the court observed that "*FMC's* 'substantial control' test . . . is in tension with *Bestfood's* focus on a party's particularized control over hazardous waste disposal processes" but declined to opine as to whether *FMC* remains good law. *Lockheed Martin Corp. v. United States*, 35 F. Supp. 3d 92, 149 (D.D.C. 2014), *aff'd,* 833 F.3d 225 (D.C. Cir. 2016).

It is in the context of this substantive law that we must address the propriety of party joinder. Because the parties view the scope of operator liability differently, they have different views regarding the propriety of joinder. Consistent with Defendant's narrow view of operator liability, Defendant has a narrow view of the facts relevant to the joinder inquiry, namely facts demonstrating particularized government control over hazardous waste disposal at each refinery. Defendant likewise has a narrow view of how to define the "series of transactions or occurrences" giving rise to Plaintiffs' claims. Defendant contends any national policy of control is irrelevant except for how implementation of the policy resulted in control over waste disposal. Plaintiffs, by contrast, have a broader view of the common factual predicates, and the scope of the "series of transactions or occurrences."

It bears repeating, however, that the specific task at hand is to decide the propriety of party joinder under Rule 20. To that end, it is necessary to "entertain the broadest possible scope of action consistent with fairness to the parties." *Gibbs*, 383 U.S. at 724; *LASA*, 414 F.2d at 147. The only facts before the Court at this stage of the case are those alleged in the amended complaint. The task at hand is not to resolve the merits of the underlying claims, or analyze the sufficiency of the allegations in the amended complaint.

**i)**

Plaintiffs' claims arise out of the same series of transactions or occurrences. The amended complaint asserts that the United States is liable as an operator under CERCLA for hazardous waste response costs stemming from the Government's control of Plaintiffs' refineries during WWII. Am. Compl. at 11. The amended complaint alleges a common factual predicate giving rise to Defendant's liability. Plaintiffs allege that PAW operated the nation's refineries by directing and controlling, at the refinery level: "(i) the allocation—by time and amount—of crude oil and other feed stocks . . .; (ii) the procurement priorities to obtain services, equipment and parts . . .; (iii) the types and specifications of war-related products to be manufactured; (iv) the levels of production for each of those products; (v) the price of the products and profits made; and (vi) to whom the products would be sold within the Government-controlled supply chain." *Id.* at 9.

Defendant argues that Plaintiffs' allegation of a "systematic, nationwide plan and policy of refinery control during the relevant wartime period" is insufficient, on its own, to satisfy the permissive joinder standard of Rule 20. Reply. at 1. Defendant contends the existence of such a nationwide plan is irrelevant for the purposes of establishing operator liability under CERCLA, which turns on "whether a party manage[d], direct[ed], or conduct[ed] operations specifically

related to pollution." Reply. at 1 (citing *United States v. Bestfoods*, 524 U.S. 51, 66-67 (1998); *United States v. Twp. of Brighton*, 153 F.3d 307, 316 & n.11 (6th Cir. 1998) ("[T]he dispositive question . . . [i]s whether the government entity was running the facility or merely regulating it," because "mere regulation does not suffice to render a government entity liable.")). Thus, the nationwide policy is only relevant to the extent the implementation of the policy at each refinery gave rise to response costs attributable to alleged Government operation of those refineries.

However, the nationwide policy is not the sole factual predicate common to Plaintiffs' claims. Rather, the amended complaint alleges that the Government controlled all inputs, outputs, and "day-to-day" operations of each refinery, thereby serving as the "*de facto*" operator of the refineries. Am. Compl. at 11. Thus, Plaintiffs contend the "Government's control necessarily extended to the generation of waste and its release into the environment." *Id.*

Defendant also underscores a number of site-specific details that differ across refineries:

the allegations of the Amended Complaint described refineries that produced a different mix of products, received different production orders from the relevant government agencies . . . were in operation for different lengths of time, were owned or operated by a different combination of entities both during and after World War II, and may have experienced differing levels of hazardous substance releases both during and after World War II.

*Id.* at 10.

Nevertheless, Rule 20(a)(1)(A) does not require an "absolute identity of all events." *Mosley v. Gen. Motors Corp.*, 497 F.2d at 1333 (8th Cir. 1974). Rather, a "substantial evidentiary overlap in the facts giving rise to the cause of action" is sufficient. *In re EMC Corp.*, 677 F.3d at 1357–58.

**(ii)**

Plaintiffs also satisfy prong two of Rule 20(a)(1), as a "question of law or fact common to all plaintiffs will arise in the action." Notably, the only facts in the record at this point are those

alleged in the amended complaint. Furthermore, it is not the Court's task at this stage to define the operative legal standard or express an opinion regarding what facts may be dispositive. At this stage in the development of the case, it is apparent that at least the following common questions of fact and law will arise: the proper legal standard for assessing the Federal Government's liability as an operator; whether the conduct undertaken by the PAW or related entities during the wartime period pursuant to executive order 9276 is in fact sufficient to establish the Government's liability as an operator. Defendant does not contend that no question of law or fact common to all Plaintiffs will arise in this action. Rather, Defendant contends that Plaintiffs' claims do not present "predominantly the same question of law or fact." Def. Br. at 13. However, Rule 20(a)(1)(B) is satisfied if "*any* question of law or fact common to all plaintiffs will arise in the action." (emphasis added).

Thus, Plaintiffs are properly joined under the Rule 20 standard for permissive joinder of parties. Defendant also seeks to "dismiss the portion of MRP's claims relating to refineries outside the Eastern District of Michigan" on the basis that those claims are misjoined. However, Defendant does not identify a basis for dismissal of those claims other than Rule 20, which applies only to permissive joinder of parties. Rule 18, on the other hand, governs joinder of claims. It contains none of the requirements of Rule 20, and provides that "a party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Thus, MRP's claims are properly joined.

**B.**

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where the action might have been brought. *See United States v. P.J. Dick, Inc.,* 79 F. Supp. 2d 803, 805-06 (E.D. Mich. 2000); 28

U.S.C. § 1404(a). The proposed transferee districts are proper venues, as Defendant proposes to sever and transfer claims to the specific district where each refinery is located. *See* 42 U.S.C. § 9613(b); *Perceptron*, 423 F. Supp. 2d at 728–29; 28 U.S.C. § 1404(a). However, Defendant has not met its burden to establish that fairness and practicality "strongly favor the forum to which transfer is sought" in light of the nine factors set forth in *Overland*. *See Thomas*, 131 F. Supp. 2d at 936; *Overland*, 79 F. Supp. at 811.

A word of caution is again in order here before addressing the *Overland* factors. Plaintiffs' amended complaint provides the sole introduction the Court has had to the facts of this case. The Court's perspective regarding venue transfer could change as the case develops further.

**(i)**

The convenience of the witnesses is one of the most important factors in deciding whether a motion to transfer under 29 U.S.C. § 1404(a) should be granted. *Thomas*, 131 F. Supp. 2d at 937. A party seeking to transfer a case should specify the key witnesses and the nature of their testimony. *New World Systems Corp. v. Jones*, 2009 WL 996954, *6 (E.D. Mich. 2009). "[W]ithout a specific list of witnesses' names and an outline of what material testimony the witnesses would provide, this Court cannot properly assess the convenience of the witnesses." *Id.* at *6.

Defendant "anticipates that witnesses in this case are likely to include persons who worked or now work at each refinery and would know about plant waste handling and disposal practices during the relevant time periods." Def. Br. at 20. However, Defendant does not identify any witnesses. Furthermore, "[I]t is the convenience of non-party witnesses, rather than employee witnesses . . . that is accorded greater weight." *Steelcase, Inc. v. Smart Technologies, Inc.*, 336 F. Supp. 2d 714, 721 (W.D. Mich. 2004). This conclusion makes sense because "each

party is obligated to procure the attendance of its own employees for trial." *American Env. Services, Inc. v. Metalworking Lubricants Co.*, 634 F. Supp. 2d 568,576 (W.D. Penn. 2009). Defendant identifies some hypothetical non-party witnesses which may include state regulatory employees and retired refinery workers.

Plaintiffs, on the other hand, have identified specific witnesses, including a non-party expert witness A.J. Gravel of FTI Consulting's Environmental Solutions practice. Pl. Br. at 16. Mr. Gravel's affidavit details the scope of his likely testimony and research he and his firm have already conducted regarding the Government's operation of refineries during WWII. *Id.* Ex. B (Gravel Aff.). Mr. Gravel believes it would be "far more efficient, practical, and convenient for me to testify in one court case." *Id.* at 6.

In light of the limited information provided regarding the convenience of witnesses, this factor does not weigh in favor of a transfer of venue.

### (ii)

The locations of the documents and the relative ease of the access to sources of proof do not weigh in favor of a transfer of venue. Defendant expects that most documents concerning refinery operations and cleanup costs "will be located at the respective refineries, at Plaintiffs' corporate offices, or in the offices of the state regulators overseeing cleanup efforts." Def. Br. at 19. Plaintiffs, on the other hand, suggest that "evidence and sources of proof are available in a central filing system in San Antonio" at their corporate headquarters. *Id.* at 18–19. In any case, "the location of documentary evidence is a minor consideration." *United States v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881, 890 (N.D. Ohio 1999). The "technological advances of recent years have significantly reduced the weight of this factor [i.e., the location of documents] in the balance of convenience analysis." *American Env. Services*, 634 F. Supp. 2d at 576; *see also*

*Grand Kensington, LLC v. Burger King Corp.*, 81 F. Supp. 2d 834, 837 (E.D. Mich. 2000) ("Given the conveniences of today's world, the Court finds that the bringing of various documents to this district is not burdensome, let alone something that would tip the scales in favor of transferring the matter . . . .").

As a result, "this factor should thus be limited to the extent that the files could not be produced in the alternative forum." *American Env. Services*, 634 F. Supp. 2d at 576 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). Plaintiffs note that "the bulk of the evidence and available historical records are currently hosted electronically and available in any form." Pl. Br. at 18. Thus, this factor does not weigh in favor of a transfer of venue.

### (iii)

The convenience of the parties does not weigh in favor of a transfer of venue. Defendant does not explain why it would be inconvenient for it to defend the case in this forum. Rather, Defendant speculates that "it would seem *less* convenient for the non-MRP plaintiffs to litigate their claims in this forum." Def. Br. at 21 (emphasis in original). Plaintiffs disagree. Without more information, this factor does not weigh in favor of a transfer of venue.

### (iv)

The locus of operative facts weighs in favor of a transfer. The locus of operative facts with respect to each refinery is the district where it is located. All relevant facts occurred at each refinery where the alleged acts or omissions giving rise to liability took place. Thus, this factor weighs in favor of a transfer.

### (v)

The ability of process to compel attendance of witnesses does not weigh in favor of transfer. "[I]t is the convenience of non-party witnesses, rather than employee witnesses . . . that

is accorded greater weight." *Steelcase, Inc. v. Smart Technologies, Inc.*, 336 F. Supp. 2d 714, 721 (W.D. Mich. 2004). This conclusion makes sense because "each party is obligated to procure the attendance of its own employees for trial." *American Env. Services*, 634 F. Supp. 2d at 576. Non-party witnesses in this case may be beyond the Court's subpoena power under Rule 45(c). However, Defendant does not specify any non-party witnesses, but merely suggests such witnesses may include state regulatory employees and retired refinery workers. Def. Br. at 20. Thus, Defendant has not met its burden to establish that this factor weighs in favor of transfer.

**(vi)**

The relative means of the parties to litigate in other forums does not weigh significantly in either direction. The United States has substantial resources in every district. While this may not be equally true of Plaintiffs, their resources are likely substantial as well. Thus, this factor does not weigh in favor of transfer.

**(vii)**

As both parties acknowledge, the forum's familiarity with governing law does not affect the analysis, as the governing law (CERCLA) is a federal statute and all proposed transferee courts are equally familiar with federal law.

**(viii)**

When analyzing a transfer of venue issue under 28 U.S.C. § 1404(a), there is a strong presumption in favor of a plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point toward trial in the alternative forum. *See Nicol v. Koscinski*, 188 F.2d 537,537 (6th Cir. 1951) ("Unless the balance is strongly in favor of the defendant, a plaintiff's choice of forum should rarely be disturbed.").

A plaintiff's choice of forum is entitled to less weight where a plaintiff has little or no connection to the chosen forum. *Audi AG v. D'Amato*, 341 F. Supp. 2d 734, 749–50 (E.D. Mich. 2004). On balance, this factor is neutral here. The Eastern District of Michigan is where three refineries are located, more than any proposed transferee district. However, this case concerns nine other refineries with little to no identified connection to the present forum.

Defendant has not pointed to private and public interest factors that clearly point toward trial in the alternative forum." *See Nicol v. Koscinski*, 188 F.2d 537,537 (6th Cir. 1951). Defendant asserts that the proposed transferee forums each have a strong interest in adjudicating claims that "concern cleanup of local contamination" and notes that courts routinely transfer CERCLA cases to the place where the contamination is located. Def. Br. at 21. However, it is not clear that "cleanup of local contamination" is as prevalent of a concern here. To a large extent, the cleanup has already occurred. The more central issue in this case is whether the United States is liable as an operator and therefore obligated to contribute payment for the cleanup. It is not apparent that the proposed transferee districts have a stronger interest in adjudicating that question. Furthermore, adjudication in one forum militates against the risk of inconsistent judgments.

**(ix)**

Trial efficiency and the interests of justice do not weigh in favor of a transfer. Defendant asserts that the relevant discovery in this case "is so site specific, it is unlikely that there are meaningful efficiencies to be gained by a trial of all Plaintiffs' claims before one court in a single action." *Id.* at 22. However, there are clearly common questions of law and fact to be decided, as explained in section IV.A.(ii) above. Adjudication in one forum facilitates efficient and consistent resolution of those common questions.

Defendant has not carried its burden to establish that fairness and practicality "strongly favor the forum to which transfer is sought" in light of the nine factors set forth in *Overland*. *See Thomas*, 131 F. Supp. 2d at 936; *Overland*, 79 F. Supp. at 811. Defendant has not furnished information regarding non-party witness convenience or party convenience that would warrant a transfer. Plaintiffs, by contrast, have identified a non-party witness whose affidavit sets forth why a transfer would greatly sacrifice efficiency and convenience.

The locus of operative facts is the site of each refinery, and this case will undoubtedly involve substantial site specific discovery. However, this is not a sufficient reason to transfer the case. Plaintiffs indicate that records are maintained in a central filing system at its corporate headquarters. Furthermore, there is no reason to believe that the bulk of relevant discovery cannot be produced electronically.

## VI.

Accordingly, it is **ORDERED** that Defendant's "motion to dismiss misjoined plaintiffs and claims or, in the alternative, to sever and transfer claims," ECF No. 13, is **DENIED**.

Pursuant to the Court's October 5, 2017, order staying Defendant's answer deadline pending resolution of the instant motion, Defendant is **ORDERED** to respond to Plaintiffs' amended complaint within seven (7) days of the entry of this order.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: November 28, 2017

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 28, 2017.

s/Kelly Winslow_____
KELLY WINSLOW, Case Manager