UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MRP PROPERTIES CO., LLC, *et al.*,

                    Plaintiffs,                         Case No. 1:17-cv-11174

v.                                             Honorable Thomas L. Ludington
                                             United States District Judge

UNITED STATES OF AMERICA,

                    Defendant.

_____/

**OPINION AND ORDER GRANTING THE GOVERNMENT'S MOTION FOR
CERTIFICATE OF APPEALIABILITY AND TO STAY PROCCEDINGS**

This matter is before this Court upon the Government's Motion for a Certificate of

Appealability and to Stay Proceedings. ECF No. 104. As explained hereafter, the Government's

Motion will be granted.

**I.**

Plaintiffs are six wholly owned subsidiaries or affiliates of the Valero Energy Corporation.[1]

In April 2017, Plaintiffs filed a complaint against the Government under section 107(a) of the

Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA),

seeking response costs arising from the investigation and cleanup of pollution created by

processing petroleum. ECF No. 43. To that end, Plaintiffs seek declaratory relief under section

113(g)(2) of CERCLA regarding the Government's liability.[2] *Id.* at PageID.777–78. Plaintiffs

---

[1] For a self-reported history of the Valero Corporation, see Valero Energy Corp., *Our History*,
VALERO (2021), https://www.valero.com/about/our-history [https://perma.cc/2ZVD-7ESE].

[2] Although Plaintiffs have not yet proven recovery costs, they need not do so when seeking
declaratory relief under § 113(g)(2). *Kelley v. E.I. DuPont de Nemours & Co.*, 17 F.3d 836, 844
(6th Cir. 1994); *see also* Rachael A. Doyle, Comment, *Obtaining A Declaratory Judgment Under
CERCLA: Should the Past Control the Future?*, 46 WAKE FOREST L. REV. 359, 368, 381 (2011)
(stating that mandatory declaratory relief under CERCLA "allows for expedited responses and

contend that the Government "operated" 12 of their refineries before and during WWII and also "owned" one of them. This case is divided into two phases: liability and damages. ECF Nos. 47; 48; 49. Factual discovery closed in August 2019. ECF No. 52. Discovery for the liability phase ended on May 4, 2020. *Id.*

In September 2020, Plaintiffs filed a motion for summary judgment. ECF No. 68. In October 2020, the Government filed a combined cross-motion for summary judgment and response to Plaintiffs' Motion. ECF Nos. 81; 86. On November 9, 2020, Plaintiffs filed a combined reply and response to Defendant's Motion. ECF No. 91. On November 23, 2020, Defendant filed a combined sur-reply to Plaintiff's Motion and reply to Plaintiff's Response to its Motion. ECF No. 96. On December 7, 2020, Plaintiffs filed a sur-reply to Defendant's Motion. ECF No. 99.

On December 9, 2021, this Court granted in part and denied in part both parties' motions for summary judgment. *See generally MRP Props. v. United States*, No. 1:17-CV-11174, 2021 WL 5834305 (E.D. Mich. Dec. 9, 2021). Specifically, Plaintiffs' motion was granted as to the request for a declaration that the Government is liable as an operator of all 12 facilities and denied as to the request for a declaration that the Government was an owner of the Plancor 1534 Facilities or the entire Eastern facility. *Id.* at *26. Conversely, the Government's motion was granted as to the request for a declaration that the Government was not an owner of the Plancor 1534 Facilities or the entire Eastern facility and denied in all other respects. *Id.*

On February 7, 2022, the Government filed a motion for a certificate of appealability and to stay the proceedings pending appeal. ECF No. 104. The certificate of appealability will be granted in Part II, *infra*, and the case will be stayed in Part III, *infra*.

---

settlement, and encourages private parties to clean up according to the NCP after the defendant is declared liable, thereby serving CERCLA's broader purposes" and "allowing the PRP to plan ahead").

**II.**

In limited circumstances, a district judge may certify for appeal a nonfinal order in a civil case. Indeed, 28 U.S.C. § 1292(b) provides that:

> When a district judge . . . shall be of the opinion that [an order not subject to interlocutory review] involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b).

In other words, this Court may certify the order for interlocutory appeal if it is "of the opinion" that "[1] the order involves a **controlling question of law** to which there is [2] **substantial ground for difference of opinion** and . . . [3] **an immediate appeal may materially advance the termination of the litigation**." *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017) (quoting 28 U.S.C. § 1292(b)) (emphases in original) (internal quotations omitted).

These findings, "along with other prudential factors," guide the Sixth Circuit's discretion to permit an appeal of this Court's order. *Id.*

**A.**

This Court's Order involves a "question of law" that is "controlling." 28 U.S.C. § 1292(b).

The "question of law" is whether this Court should have applied the Sixth Circuit's "actual control" standard of operator liability—set forth by Chief Judge Boggs's interpretation of *United States v. Bestfoods*, 524 U.S. 51 (1998)—from *United States v. Township of Brighton*, 153 F.3d 307 (6th Cir. 1998). This Court's order holding that no reasonable juror could find that the Government was not an operator of all 12 facilities to some extent under CERCLA seemingly falls within the category of an "order [that] involves . . . a question of law," even if mixed with questions of fact. *See* 28 U.S.C. § 1292(b); *see, e.g.*, *Nw. Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.*, 270 F.3d

1018, 1025 (6th Cir. 2001) (granting petition to hear interlocutory appeal after certification and affirming denial of motion to dismiss and partial motion for summary judgment). Further, the application and import of *United States v. Bestfoods*, 524 U.S. 51 (1998) are also questions of law. *See In re Trump*, 874 F.3d at 951. Indeed, by interpreting *Bestfoods*, this Court held as a matter of law that the Government is a former operator of each of the 12 refineries in question. *MRP Props.*, 2021 WL 5834305, at *18, 21, 23.

Second, a legal issue is controlling if it could materially affect the outcome of the case. *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002). These questions of law are undoubtedly "controlling" because their resolution "could materially affect the outcome of the case." *Cf. In re Trump*, 874 F.3d at 951 (finding the same at the motion-to-dismiss stage).

**B.**

This Court's order gives rise to a "substantial ground for difference of opinion." 28 U.S.C. § 1292(b).

"A substantial ground for difference of opinion exists whe[n] reasonable jurists might disagree on an issue's resolution, not merely whe[n] they have already disagreed." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). Further, as this Court has explained, substantial ground for a difference of opinion on the issues raised by an interlocutory order exists when: "(1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions . . . or (4) the circuits are split on the question." *Newsome v. Young Supply Co.*, 873 F. Supp. 2d 872, 876 (E.D. Mich. 2012).

There is only one case in the Sixth Circuit that directly addresses the issue that was before this Court when it issued the December 9, 2021 order: *Brighton*, 153 F.3d 307. The Government

contends that *Brighton* directly conflicts with the Third Circuit's "macro-management" standard for operator liability set forth in *PPG Industries v. United States*, 957 F.3d 395 (3d Cir. 2020). ECF No. 104-1 at PageID.11623. Further, as the Government correctly notes, *Bestfoods* did not elaborate on the meaning of "operations specifically related to pollution" and there is no controlling Sixth Circuit precedent on this question. *Id.* at PageID.11623–24. Moreover, the Government adds, reasonable jurists might disagree on the proper interpretation of *Bestfoods*. *Id.* at PageID.11627.

In essence, then, the Government argues that the Sixth Circuit might walk back the standards that this Court applied from Chief Judge Boggs's plurality opinion and Judge Moore's concurring opinion in *Brighton*, and instead adopt Judge Dowd's dissent from *Brighton*, the Third Circuit's standard from *PPG*, or that of some "other courts outside of the Sixth Circuit." *See id.* at PageID.11622–31.

It is entirely possible that the Sixth Circuit would overturn *Brighton* to adopt or create a new standard of operator liability under CERCLA, so there is "substantial ground for a difference of opinion." *In re Trump*, 874 F.3d at 951.

## C.

The petition "*may* materially advance the termination of the litigation." *In re Trump*, 874 F.3d at 952 (quoting 28 U.S.C. § 1292(b)).

An interlocutory appeal materially advances the litigation when it "save[s] judicial resources and litigant expense." *West Tenn.*, 138 F.Supp.2d at 1026. "The requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law." *City of Dearborn*, 2008 WL

5084203 at *3, 2008 U.S. Dist. LEXIS 107527 at 7 (quoting *Philip Morris Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D. Mass. 1997)).

Only liability has been determined thus far. What remains, then, is the discovery-intensive damages phase. An order from the Sixth Circuit requiring this Court to apply a new standard for operator liability would rewind this case to the summary-judgment stage. Allowing the parties to proceed to discovery while their efforts could later become moot or irrelevant risks wasting judicial resources and litigation expenses—especially considering that this case includes more refineries than any other CERCLA operator-liability case ever. Indeed, as the Government notes, this trial could take months. ECF No. 104-1 at PageID.11632.

For these reasons, this Court will issue a certificate of appealability.

### III.

The certification of an order for interlocutory review does not automatically stay district court proceedings. *See* 28 U.S.C. § 1292(b). However, this Court has the inherent authority to stay proceedings pending resolution of the certified issues on appeal. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

No scheduling order has been issued for Phase Two. And no Phase Two discovery has commenced. Procedurally, therefore, this case is at a natural breaking point for appellate resolution of the Government's liability over the 12 refineries.

To decide whether to stay proceedings during the pendency of an appeal, courts "consider the same four factors that are traditionally considered in evaluating the granting of a preliminary injunction":

> (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.

*Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)

("These factors are not prerequisites that must be met, but are interrelated considerations that must

be balanced together."). The Government has not addressed any of the four factors.

**A.**

The first factor in considering whether to grant a stay is the appellant's likelihood of

success on the merits. *Id.* at 153.

The Government does not have a high likelihood of success on the merits of its claim.

According to the Sixth Circuit, "[c]ustom and tradition in the various circuits of the United States

Court of Appeals dictate that one panel of a circuit court will not overrule the decision of another

panel; only the court sitting *en banc* may overrule a prior decision of a panel." *United States v.*

*Smith*, 73 F.3d 1414, 1418 (6th Cir. 1996) (citing *Shattuck v. Hoegl*, 523 F.2d 509 (2d Cir. 1975)).

Moreover, "[t]he Sixth Circuit has long adhered to this venerable principle." *Id.*

Although the Sixth Circuit might take up the question *en banc* to reverse *Brighton*, it is

unlikely. However, as discussed later, Defendants would suffer irreparable injury absent a stay.

*See* discussion *supra* Section II.C; *infra* Section III.B. Therefore, because the "[t]he probability of

success that must be demonstrated is inversely proportional to the amount of irreparable injury,"

Defendants need only show the presence of "serious questions going to the merits." *Griepentrog*,

945 F.2d at 154.

The issue of the proper standard to apply when resolving operator liability under CERCLA

is a serious question. At issue in each case is whether the CERCLA Superfund or private parties

must foot the bill for environmental cleanup. That could cost upwards of $50 million, and the

cleanup could last for decades.

In this way, this factor weighs in favor of a stay.

**B.**

The second factor is the irreparability of the harm that would be suffered absent a stay.

As discussed earlier, absent a stay, all the parties would be irreparably harmed if they had

to assess damages in the largest CERCLA case ever then later to be required to reassess those

damages due to the Sixth Circuit creating or adopting a new CERCLA operator-liability standard.

*See* discussion *supra* Section II.C. An additional spill-over effect would be the lag created in this

Court if it must address the damages phase twice.

Therefore, this factor weighs in favor of a stay.

**C.**

The last two factors are whether a stay would harm anyone and the public interest in a stay.

No foreseeable parties will be harmed if this Court grants a stay. Moreover, the public

interest in granting the stay is large because tax dollars compose the Superfund, which pays out if

the Government is found liable under CERCLA. Indeed, a new CERCLA operator-liability

standard, as the Government notes, "could result in the dismissal of up to five of the six Plaintiffs."

ECF No. 104-1 at PageID.11613, 11620, 11622. Moreover, both factors are bolstered by the

expense likely to follow a rewind of the discovery phase if the Sixth Circuit creates a new

CERCLA operator-liability standard.

Therefore, the last two factors weigh in favor of a stay.

Because all four factors weigh in favor, the case will be stayed pending denial or resolution

of the Government's appeal.

**IV.**

Accordingly, it is **ORDERED** that the Government's Motion for a Certificate of

Appealability and to Stay Proceedings, ECF No. 104, is **GRANTED**.

- 9 -

Further it is **ORDERED** that the Government is **ISSUED** a certificate of appealability for

*MRP Properties Co., LLC v. United States*, No. 1:17-CV-11174, 2021 WL 5834305 (E.D. Mich.

Dec. 9, 2021).

Further, it is **ORDERED** that this case is **STAYED** until the Sixth Circuit resolves the

Government's appeal.


Dated: February 16, 2022                     s/Thomas L. Ludington
                                             THOMAS L. LUDINGTON
                                             United States District Judge